## STATE OF CONNECTICUT *v.* ROBERT L. FLOYD
## (4115)

HULL, DALY and BIELUCH, Js.

Argued December 10, 1986—decision released April 7, 1987

*Timothy H. Everett,* with whom, on the brief, were *Cynthia J. Clancy* and *Stephen Knudsen,* legal interns, for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, was *Mary Galvin,* assistant state's attorney, for the appellee (state).

DALY, J. After a jury trial, the defendant was convicted of the crimes of arson in the third degree in vio-

lation of General Statutes § 53a-113 (a) and of using a motor vehicle without the owner's permission in violation of General Statutes § 53a-119b (a) (1). On appeal, the defendant claims that the court erred in denying his motions for a mistrial due to (1) improper summation by the prosecutor, and (2) the trial court's expression of its personal feelings before the jury. He further claims that it was error to admit evidence concerning the complainant's state of mind.

The jury could reasonably have found the following facts. In the early morning of October 1, 1983, a fire was discovered in the back seat of a car parked in a lot on Mansfield Street, New Haven. The fire appeared to have been burning only a short time prior to its discovery. The car had no license plates, its left front tire was flat and there was fresh damage to the front bumper and hood. The automobile was registered in the name of Robert Gattison but was being used with his permission by his sister, Sherry Gattison, the live-in companion of the defendant. There were no signs of forced entry and it appeared that the car had been started with a key. The complainant, Sherry Gattison, had not given the defendant permission to drive the car. The defendant and the complainant were in the midst of breaking-up, and the defendant was planning to vacate the couple's shared residence.

The complainant had parked her brother's car in front of the couple's apartment at 6 p.m. the prior evening, entered the apartment, and taken a nap. The defendant came home some two hours later, soon departed and returned at approximately 1:30 a.m. on October 1. At that time, the defendant told the complainant that he had taken the car and driven it into a tree and then had set the car afire and contemplated committing suicide in the flaming car. At approximately 3 a.m., the complainant received a telephone call from her mother who stated that the police found the vehicle in a park-

ing lot. The complainant then told the defendant she was going to telephone the police, but refrained from doing so because the defendant threatened her. The complainant did not, in fact, relay her knowledge of the original crime to the police until October 24, 1983. The defendant's car was similarly set on fire some twenty hours later. The defendant accused the complainant's brother of setting the fire.

The defendant presented an alibi defense and alibi witnesses. The defendant's alibi that he was with friends until returning to the apartment at 9:30 p.m. conflicted, however, with the alibi witnesses' testimony that he was with them until 11:30 p.m.

The state's chief witness was the complainant, Sherry Gattison. During the trial, she testified that she had not received any of the insurance proceeds from the car fire. The next day, the state's attorney informed the court that the complainant had, in fact, received $1400 in insurance proceeds but had been confused by defense counsel's questioning. The defense used this discrepancy to impeach the witness.

I

In his first claim of error the defendant asserts that his motion for a mistrial due to impermissible conduct by the prosecutor should have been granted. He claims that the prosecutor's closing argument was improper in three ways. First, that she injected her personal ethics into the summation; second, that her mention of the fifth amendment presumption of innocence and reasonable doubt was an improper reference to the defendant's failure to testify in his own behalf; and finally, that the prosecutor unfairly labeled him a "liar."

"Article first, § 8 of the Connecticut constitution provides that '[n]o person shall be . . . deprived of . . . liberty . . . without due process of law . . . .' It is

the prosecutor's duty to ensure that a defendant's conviction comports with this provision. . . . 'By reason of [her] office, [the prosecutor] usually exercises great influence upon jurors. [Her] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because [she] represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment.' " *State* v. *Couture,* 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

The role of a prosecutor is different from that of an ordinary advocate for the prosecutor's duty is to see that justice is done. He or she must refrain from trying to arouse prejudice in the jury; *State* v. *Falcone,* 191 Conn. 12, 22, 463 A.2d 558 (1983); or from diverting their attention from their duty to base their conclusions on the evidence actually presented at trial. *State* v. *Couture,* supra, 562.

When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial. "The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984).

The trial court is in a better position than we are to assess the arguments of counsel and is, therefore, granted wide discretion in determining their propriety. While the trial court's actions are subject to review, we will reverse a decision only if the court clearly exceeded or abused its discretion resulting in obvious prejudice and injury to some party. *State* v. *Evans,* 165 Conn. 61, 65, 327 A.2d 576 (1973).

Although a prosecutor may, indeed should, argue to the jury all reasonable inferences from the evidence presented, an expression of his or her personal opinion of the credibility of a witness is not evidence and as such should not be argued to the trier of fact. Rules of Professional Conduct, Rule 3.4 (e) (formerly Code of Professional Responsibility, Canon 7, EC 7-24); accord 1 A.B.A. Standards for Criminal Justice (2d 1980) The Prosecution Function, § 3-5.8 (b). In this case, the defendant claims the prosecutor improperly "vouched" for the credibility of Sherry Gattison, by stating during rebuttal: "If you believe I've intentionally put on any perjured testimony in this case, if you believe, ladies and gentlemen of the jury, that I've lied to you, that I have misrepresented facts, then even though I'm not here as Mary Galvin—I am here as the prosecutor for the people of the State of Connecticut—for my ethics, I have to say to you if you believe that, acquit this man."

While the prosecutor's references to her personal ethics in this case were improper, "[w]e also recognize that 'the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument.' " *State* v. *Magnotti,* 198 Conn. 209, 220, 502 A.2d 404 (1985). Defense counsel launched an ad hominem attack on the prosecutor in her own closing argument and accused the prosecutor of being unethical and disrespectful by calling Sherry Gattison as a witness when she knew she would commit perjury. In light of this, the assistant state's attorney's remark on rebuttal, while improper when viewed in isolation, was clearly invited by defense counsel and, as such, its prejudicial impact was not as great as if it had been unprovoked. *State* v. *Falcone,* supra, 23. We conclude, therefore, that while the prosecutor's "voucher" of Sherry Gattison's credibility was improper and may have been prejudicial in isolation,

the defendant has not proved that it denied him the right to a fair trial. See *State* v. *Glenn,* 194 Conn. 483, 497, 481 A.2d 741 (1984).

In addition, the trial court admonished the jury that the comments of counsel were arguments, and not evidence. Defense counsel did not object or except to this charge or claim that it was inadequate to offset the prosecutor's remarks. We conclude that the prosecutor's remarks were not so prejudicial as to render the curative instruction ineffective. See *State* v. *Couture,* supra, 562.

The defendant also claims that the prosecutor's reference to the fifth amendment presumption of innocence and its burden of proof beyond a reasonable doubt was improper. The relevant portions of the prosecutor's closing argument are as follows: "The defense relies on the fifth amendment burden of proof beyond a reasonable doubt in their argument to you . . . . And, ladies and gentlemen, the fifth amendment burden of proof beyond a reasonable doubt is a protection for the innocent. As much as it is your responsibility to use and apply the fifth amendment burden of proof beyond a reasonable doubt standard to protect the innocent, it is your concomitant responsibility not to allow the fifth amendment burden of proof beyond a reasonable doubt to be a shield for the guilty. Ladies and gentlemen, your responsibilities are equal on both sides. The burden of proof beyond a reasonable doubt is a shield for the innocent. It is not a barrier to conviction for the guilty. . . . To find reasonable doubt in this case, you would have to speculate. You would have to surmise. You would have to engage in conjecture. And under the fifth amendment burden of proof beyond a reasonable doubt, you cannot speculate or surmise or guess . . . ." The defendant claims that such reference was an impermissible comment on his decision not to testify. Clearly a prosecutor may not comment at

trial on a criminal defendant's failure to testify. *Griffin* v. *California,* 380 U.S. 609, 615, 85 S. Ct. 1299, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965); *State* v. *Cohane,* 193 Conn. 474, 482, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984); *State* v. *Allen,* 9 Conn. App. 169, 178, 517 A.2d 1043 (1986). In a case involving alleged prosecutorial misconduct, if "the alleged misconduct involves the prosecutor's indirect comment on the decision of the accused not to testify, the test is whether the comment was ' "of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' " *State* v. *Magnotti,* supra, 216. This is not, however, the case before us. Here, the assistant state's attorney's mention of the fifth amendment was in reference to the state's burden of proof beyond a reasonable doubt. The defendant is reading into these remarks something that is not there. He makes the broad, conclusory statement in his brief that "the jury sensibly and naturally would have understood the prosecution's references to the fifth amendment" as a comment on his failure to testify. We disagree. The prosecutor's remarks were an explanation that while the state must prove its case beyond a reasonable doubt it need not prove it absolutely. Such was the natural and necessary interpretation of the remarks. Thus, we conclude that the defendant has not demonstrated that the challenged comments were improper comments on his failure to testify.

The defendant's final attack on the prosecutor's summation revolves around the prosecutor's use of the word "liar" to refer to the defendant. The prosecutor claimed that the defendant lied to police officers and a fire investigator prior to trial. The record in this case establishes that the defendant's statements to the police prior to trial conflicted with the evidence presented at

trial by the police and even the defendant's alibi witnesses. While we agree that a prosecutor should not attempt to inflame the passions or prejudices of the jury to divert their attention from their duty to decide the case on the evidence alone, this does not mean that the prosecutor cannot present a strong and cogent argument. *State* v. *Carr,* 172 Conn. 458, 470, 374 A.2d 1107 (1977); *State* v. *Allen,* supra, 178, 181. A prosecutor may not comment on facts not in evidence. *State* v. *Ferrone,* 96 Conn. 160, 169, 113 A. 452 (1921); see also *State* v. *Glenn,* supra, 492–93. In this case, however, the inconsistencies to which the prosecutor referred were in evidence through witnesses other than the defendant who exercised his right not to testify. Our review of the record makes clear that the prosecutor was referring to testimony of alibi witnesses presented by the defendant which conflicted with pretrial statements made by the defendant which were admitted into evidence. Thus, the prosecutor's remarks referred to facts in evidence and on the record and were an attempt to highlight the serious flaws in the defendant's case.

We do not condone the challenged portions of the prosecutor's arguments in this case or her use of the word "liar." Yet we are convinced, given the context of the trial as a whole, including particularly the impassioned and improper comments of defense counsel and her use of the word "liar," that the prosecutor's comments did not deny the defendant a fair trial.

## II

The defendant's second claim of error is that he was entitled to a mistrial since the court expressed its personal feelings before the jury by interfering with the defendant's right to cross-examine certain of the state's witnesses. It is indisputable that the defendant is entitled to fully confront and cross-examine the witnesses appearing against him. U. S. Const., amend. VI,

XIV; Conn. Const., art. 1, § 8; see also *State* v. *Hackett,* 182 Conn. 511, 517, 438 A.2d 726 (1980).

The defendant claims that the court improperly interfered when it prohibited the use of the words "lying" and "perjury" when the state's chief witness, Sherry Gattison, was being cross-examined. The court stated; "I think it's sufficient to say that she says she was confused. Whether that's to be believed or not, it's within the jury's function; and based on that confusion, she did not tell the truth yesterday." The defendant argues that this comment exposed the jury to the judge's personal opinion of the witness' credibility. We recognize that a trial judge plays an important and authoritative role in any court proceeding. While the judge must be impartial, he may intervene in an attempt to reach the truth when counsel has failed to do so. A judge should not assume the role of an advocate and must refrain from making comments which favor or condemn any party before the jury. A fine line separates proper and improper judicial conduct and the judge must strive to appear impartial and detached. See *State* v. *Fernandez,* 198 Conn. 1, 11, 17, 501 A.2d 1195 (1985); see also *State* v. *Camerone,* 8 Conn. App. 317, 325, 513 A.2d 718 (1986). Nevertheless, we recognize that a trial judge has the right to question a witness when necessary to eliminate confusion in a question or an answer or to restrain a rambunctious witness. *State* v. *Smith,* 200 Conn. 544, 549, 512 A.2d 884 (1986). In this case, the trial court did not otherwise restrict the extensive cross-examination by the defendant. It did not indicate its belief or disbelief in Sherry Gattison's testimony, since it specifically instructed the jurors that it was up to them to judge her credibility. Hence, the trial court's comments did not deprive the defendant of his right to a fair trial or to an impartial jury.

### III

Finally, the defendant claims that the trial court erred in allowing Sherry Gattison to testify that her

belief that her brother's car was equipped with an anti-theft device, which precluded its use without a key, was based solely on the fact that her brother told her it was so equipped. The court allowed the testimony under the "state of mind" exception to the hearsay rule. The witness explained that she delayed reporting the defendant's involvement in the car fire because she was afraid she would be blamed for the fire since the car had an anti-theft device and she alone possessed the keys. The defendant argues that the brother's out-of-court statement to the witness regarding the anti-theft device is inadmissible hearsay. "It is an elementary premise of evidentiary law, however, that testimony is considered to be hearsay only when it is an out-of-court statement 'offered to establish the truth of the matters contained therein.'" *State* v. *Delgado,* 8 Conn. App. 273, 282, 513 A.2d 701 (1986); *State* v. *Sharpe,* 195 Conn. 651, 661, 491 A.2d 345 (1985). If such a statement is offered, instead, to show the defendant's state of mind upon hearing it, it is not offered for its truth. See C. McCormick, Evidence (3d Ed. 1984) § 249, p. 734. In the present case, the brother's out-of-court statement was not offered to prove whether the car was, in fact, equipped with an anti-theft device. It was offered to show only that the witness thought it was so equipped. Thus, it was not hearsay. Since the testimony sought to be introduced here was not hearsay and was not irrelevant or collateral to an issue in the case it was properly admitted. *State* v. *Delgado,* supra, 282.

There is no error.

In this opinion HULL, J., concurred.

BIELUCH, J., dissenting. I disagree with the following conclusions of the majority responding to the first claim of error alleging that the defendant was denied a fair trial by the prosecutor's misconduct in her summation of the evidence to the jury: (1) that while the

prosecutor's "voucher" of Sherry Gattison's credibility was improper and may have been prejudicial in isolation, the defendant has not proved that it denied him the right to a fair trial; (2) that the prosecutor's references to the fifth amendment presumption of innocence and the fifth amendment burden of proof beyond a reasonable doubt were not improper comments on the defendant's failure to testify; and (3) that since the prosecutor's use of the word "liar" in reference to the defendant was predicated on evidence in the record, the comments were not "flagrantly improper [and] [t]he defendant has failed to establish that the claimed error was harmful." A review of the record demonstrates abundantly that the defendant was denied a fair trial by the prosecutor's recklessly improper and irresponsibly prejudicial closing arguments. Apart from the evidence, by the personal attacks, subjective intrusions and instructive injunctions of this summation, the defendant was represented to be guilty beyond a reasonable doubt, and thereafter was convicted by the jury without a fair trial.

The conduct of counsel at trial, as relevant here, was regulated by the Code of Professional Responsiblity DR 7-106 (C), which provided at the time of the trial: "In appearing in his professional capacity before a tribunal, a lawyer shall not: . . . (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness . . . or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."[1] Measured by this framework, I would find that the prosecutor's conduct in her summation to the jury exceeded its perimeter.

---

[1] Rules of Professional Conduct, Rule 3.4, effective October 1, 1986, provides, in relevant part: "A lawyer shall not: . . . (e) In trial . . . state a personal opinion as to the justness of a cause, the credibility of a witness . . . or the guilt or innocence of an accused."

Additionally, it is the duty of the prosecutor to ensure that a defendant's conviction comports with article first, § 8, of the Connecticut constitution, which provides that "[n]o person shall be . . . deprived of . . . liberty . . . without due process of law . . . ." *State v. Couture,* 194 Conn. 530, 564, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). I would hold that the prosecutor's excessive and passionate summations denied the defendant this constitutional right to a fair trial.

The transcript of the arguments of counsel discloses that the prosecutor improperly attacked the defendant personally, initially in the opening argument, and finally, but more vehemently, in her closing statements to the jury. The opening remarks of the prosecutor extended for sixteen minutes. Since the defendant did not testify at trial, she therefore reviewed his pretrial statements to witnesses repeated in testimony. In commenting on these out-of-court statements, the prosecutor repeated to the jury for a total of ten times that the defendant was a "liar" or "lied" to the witnesses. To call a defendant a "liar" is to brand him as one who has made a false statement with the intent to deceive. The credibility of witnesses and of nontestimonial statements allowed as exceptions to the hearsay rule are the sole function and domain of the jury. The repetition of such a conclusion or opinion to the jury, initially for ten times, magnified its egregiousness and intensified its prejudice to the defendant.

The defendant's counsel, in turn, in her argument to the jury also improperly opined that the complainant was a "liar" or "lied," even under oath to the police and on the witness stand. This characterization was repeated thirty-three times in this summation. Additionally, in reference to the complainant's testimony, defendant's counsel personally attacked the prosecutor with these remarks: "The next day, she said she

had been confused. That wasn't confusion. That was a lie. That was an important lie because it showed you that right in front of you, she would lie, the way she lied to the police and the way she's been lying from the beginning of this case. I don't know why she's been lying. Maybe you don't know why she's been lying. But she's a liar. We don't have to know why. I don't have to prove anything in this case. [The prosecutor] put her on the stand, and she vouches for her credibility; and she expects you to convict this man on the basis of this woman's testimony." Such an unprovoked charge against the prosecutor was improper and unprofessional conduct.[2] The branding of the complainant as a "liar" thirty-three times was an improper statement of incredibility by the defense counsel. The complainant, however, was not on trial, and prejudice to her, therefore, is not before us for review.

The personal exchange between counsel thereafter escalated in the prosecutor's rebuttal to the jury. The court's failure to intervene suo motu and restrain such indecorous and unyielding conduct of counsel allowed its harmful prejudice to the defendant to become irreducible, thereby depriving him of a fair trial. Flagrant abuse of a defendant by intemperate argument of counsel imposes upon the court a responsibility to steer the trial back to its true and fair course, with corrective and cautionary instructions to the jury. The prosecutor began her closing argument by stating: "Ladies and gentlemen, back in ancient times . . . what Plato and Cicero said was when you don't have the facts on your side, when you're speaking or trying to persuade, when you don't have anything on your side, there's really only two things that you can do; and those two things are to try and confuse the facts or leave the facts out and,

---

[2] In her remarks before sentencing, defense counsel told the court: "I will admit that I may have mistakenly misstated the law in the State of Connecticut saying [the prosecutor] vouched for Miss Gattison's credibility."

secondly, to attack your opponent. The second one, in Latin times, was called an ad hominem attack, and I think in this courtroom today you have probably seen the most classic case of an ad hominem, except by a female, as I've ever seen. I think you've also seen a classic case of confusing the issues. . . . "

After a brief review of the testimony purporting to support her claim that the defense sought to confuse the facts, the prosecutor delivered this challenge to the jury: "Ladies and gentlemen, the Greeks, particularly Plato, said, the dirtiest, the lowest, the most desperate attack you ever make is personally on your opponent. Now, in this courtroom this morning, you were told that there's a voucher rule in the State of Connecticut. Whether there is or there isn't, you were told that I put on a witness who I knew was committing perjury. You were told that I was unethical. You were told that it was disrespectful to put Sherry Gattison on the stand. You were told, ladies and gentlemen of the jury, that me, not just the State of Connecticut— that I've been unethical. . . . Ladies and gentlemen, let me tell you, if you believe I've intentionally put on any perjured testimony in this case, if you believe . . . that I've lied to you, that I have misrepresented facts, then even though . . . I am here as the prosecutor for the people of the State of Connecticut—for my ethos, I have to say to you if you believe that, acquit this man."

The prosecutor's summation to the jury thereafter continued with a further review of the testimony. In answer to the claim by defense counsel that the complainant had lied, she stated: "I submit that if we go through the evidence in this case, there's only one person that has been proven a conclusive liar, and we already covered that in opening argument. . . . Who is the only person in this case who has been proven, by both sides, defense and State, to be a liar? Robert Floyd."

Thereafter, the prosecutor repeatedly informed the jury for an additional twenty-nine times that the defendant was a "liar" or "lied" to the witnesses in his quoted statements. Included in such remarks were these: "The only person in this case who was a proven liar is the defendant, Robert Floyd, and he's a proven liar not only by the State's case. The ironic, outrageous fact in this case is he's proven a liar by his own witnesses. Every single one of them proves him a liar."

The defendant claims error also in a third aspect of the prosecutor's final and irrebuttable argument, namely, the repetitious and "erroneous" references to the fifth amendment which the jury could have assumed to be comments on his failure to testify. These statements were capable of misinterpretation by the jury as claimed. The guaranty of the fifth amendment to the United States constitution that no person "shall be compelled in any criminal case to be a witness against himself" applies to the states by the fourteenth amendment, which provides that no state shall deprive any person of life, liberty or property, without due process of law. *Malloy* v. *Hogan*, 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). In common parlance, however, the fifth amendment is equated with the privilege against self-incrimination, while the fourteenth amendment is equated with due process of law. The constitutional rights and requirements in criminal proceedings are subjects for the judge's charge or instructions of law to the jury. Where they are referred to in counsel's argument or summation of the evidence to the jury, they must not be misstated. Finally, there is the suggestion by the prosecutor in these contested statements that the defendant is relying on his constitutional rights in defense of the charges. This is contrary to the constitutional burden of the state to prove him guilty beyond a reasonable doubt. The presumption of innocence is not a defense; the defendant does not have

to prove his innocence. Rather, it is a burden of proof that the state has to overcome in its prosecution. In criminal prosecutions it applies equally to the guilty, as well as to the innocent, for a defendant is innocent until proven guilty beyond a reasonable doubt. It is neither a sword, nor a shield, but a necessary element of proof to be borne *solely* by the prosecution. These constitutional precepts were diluted by the prosecutor's final summation to the jury, all to the irreducible prejudice of the defendant.

The first of such statements by the prosecutor was as follows: "The defense relies on the fifth amendment presumption of innocence and on the fifth amendment burden of proof beyond a reasonable doubt in their argument to you. Ladies and gentlemen, as I said . . . I am here as an assistant state's attorney who represents the people of the State of Connecticut and whose responsibility it is to attempt to see that justice is done. And, ladies and gentlemen, the fifth amendment burden of proof beyond a reasonable doubt is a protection for the innocent. As much as it is your responsibility to use and apply the fifth amendment burden of proof beyond a reasonable doubt standard to protect the innocent, it is your concomitant responsibility not to allow the fifth amendment burden of proof beyond a reasonable doubt to be a shield for the guilty. Ladies and gentlemen, your responsibilities are equal on both sides. The burden of proof beyond a reasonable doubt is a shield for the innocent. It is not a barrier to conviction for the guilty."

After a short review of the evidence, the prosecutor then made this challenging statement to the jury beyond the scope of the evidence: "You have a man who has lied up and down the ranks of the New Haven police department and also to a fire investigator. Ladies and gentlemen, if that is not proof beyond a reasonable doubt, then, ladies and gentlemen, there can't be

a case with proof beyond a reasonable doubt that is based on evidence." This convicting statement was followed by these instructive remarks: "To find reasonable doubt in this case, you would have to speculate. You would have to surmise. You would have to engage in conjecture. And under the fifth amendment burden of proof beyond a reasonable doubt, you cannot speculate or surmise or guess."

In concluding her summation, the prosecutor made the following request: "I ask you to remember that your responsibility as jurors serving the Judicial Department of the State of Connecticut is to make sure that the fifth amendment burden of proof beyond a reasonable doubt is not an unwitting protection for the guilty. . . . The entire people of the State of Connecticut ask you to decide who is a liar, and this one citizen of the State of Connecticut asks you to decide who was telling the truth and who wasn't telling the truth. Again, ladies and gentlemen, I have to come back to Plato and Cicero. If, ladies and gentlemen of the jury, you believe I've been unethical, then I won't even ask you to do your job. . . . If there were facts left out in this case, from whence did that come? . . . And, ladies and gentlemen, I submit that if, in fact, you believe Investigator Esposito that this was an intentionally set fire—and I think that that's just about conceded by the defense— then I would submit that the fifth amendment protection of the burden of proof beyond a reasonable doubt has been met by all of the evidence in this case because once you know it's an intentionlly set fire, you know there is only one person in the world who could have set that car on fire. You know that there is only one person in the world who lied up and down in every sentence he spoke about this case to the police and to the fire officials. There's only one person who lied in every word they said. Ladies and gentlemen, that is this defendant, Robert Floyd. And as a representative of

the people of the State of Connecticut, I ask that when you retire to the jury deliberating room, that you not let that fifth amendment burden of proof be anything more than it is because the fifth amendment burden of proof is a protection for the innocent and is not a shield to protect the guilty. Thank you.''

At no time during these arguments did the court intervene, nor was it asked to do so by either counsel. Upon the conclusion of the summations, counsel for the defendant made timely objection to the prosecutor's remark to the jury that the fifth amendment was not a shield to protect the guilty, claiming that it was a comment on the defendant's failure to testify. For this reason, counsel moved for a mistrial. After allowing a response by the prosecutor, the court proceeded to charge the jury without ruling on the pending mistrial motion. The court was not requested to give a curative charge, and it neither offered to give such a charge, nor gave one. The case went to verdict before the court ruled on the defendant's motion for mistrial.

The general instructions given were those usual to a criminal action. After giving the specific instructions concerning the charges against the defendant, the court concluded its charge with these remarks that appear to have been relevant to the prosecutor's closing arguments: ''I instruct you that a person in police custody has no obligation to cooperate with the police, has no obligation to say anything and, further, has no obligation to provide information to the police officers upon their request. You may not draw any unfavorable inference based on the testimony of a police officer. That information was not forthcoming from the defendant . . . and, again, I leave to you, in your role as determiners of the fact, your role as the triers of the fact, to determine what evidence, with respect to all the testimony and evidence, is to be believed and what is not to be believed. . . . It is the sworn duty of the courts

and jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence which the law imputes to every person so charged and making the state meet its burden of proving guilt beyond a reasonable doubt; but you must keep in mind that this presumption of innocence is made to protect the innocent and not the guilty."[3]

The only exception taken by the defendant to the court's charge was its failure to instruct the jury that an adverse inference was permissible because of the state's failure to call a witness within its power to produce and who would naturally be produced by it, the so-called *Secondino* charge. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 165 A.2d 598 (1960).

After his convictions, the defendant filed motions for a new trial and for judgment of acquittal. These were heard preliminary to sentencing. At that hearing, defense counsel informed the court that the motion for mistrial had not been decided, and repeated her grounds for a mistrial, concluding with this statement: "And, your Honor, that's my primary basis for a Motion for New Trial, was that the prosecutor's summation was the kind of overreaching that our Supreme Court has condemned. Not only by her oblique and continued comments of the fifth amendment, refusal of the defendant to take the stand, her personalizing her summation, putting her reputation on the line in order to get a conviction of this defendant. She's absolutely improper. Referring to him as a liar, putting his character in evidence, all are so unfair and so beyond the balance of what our Supreme Court has said is appro-

---

[3] Defense counsel did not take an exception to the charge that "you must keep in mind that this presumption of innocence is made to protect the innocent and not the guilty." "Our constitution, however, does not condition constitutional rights on guilt or innocence." *State* v. *Couture,* 194 Conn. 530, 565, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985).

priate, that I would ask your Honor for a new trial on those bases." After a response by the prosecutor, rebuttal was allowed and emphasized the defendant's claim that the prosecutor "put herself, her reputation on the line with this jury and said if you think that I'm unethical, then acquit this man," thereby impressing the jury with the thought that an acquittal would stamp the prosecutor as unethical.

The court did not recall the motion for mistrial, but stated, in response: "[I]f, indeed, that is the situation, I can state unequivocally for the record that I found nothing during the course of this entire trial which would merit the court's granting a motion for mistrial. Furthermore, I found nothing with respect to any prosecutorial conduct during the course of this trial, and that includes the summations, which would result in anything unconstitutional or prejudicial to the defendant. . . . I must say that at times I was extremely patient with situations which seemed to me extreme, on the border of severity in terms of relationship between counsel. I thought I was extremely patient in allowing constitutional argument to continue, albeit somewhat personal in nature against each other, but never, I felt, to the prejudice of the defendant. Otherwise, quite frankly, I would have ruled so at that time faced with a proper objection, which as I recall, never came. Or if it, indeed, came I ruled upon it forthwith."

The court further stated that coupled with its instructions regarding the defendant's right not to testify and "the other cautionary instructions" normally given, "there was nothing throughout the course of this trial which could be construed as prejudicial to the defendant." Thereafter the defendant's motions were denied and he was sentenced to a total effective term of imprisonment of four and one-half years.

"[My] review of Connecticut case law dealing with prosecutorial misconduct has failed to uncover a situ-

ation precisely like the one before us." *State* v. *Ubaldi*, 190 Conn. 559, 566, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). The law school expression, "no case has a brother," aptly fits the variations found in the reported cases of prosecutorial misconduct. These differences flow from the individuality of people and diversity of circumstances. "Each case necessarily depends on its own facts and circumstances." *State* v. *Couture*, 194 Conn. 530, 563, 482 A.2d 300 (1984), cert. denied, 464 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). In the more common situation, prosecutorial misconduct is based upon one or a few isolated or brief episodes in the course of a trial. The case before us, however, illustrates prosecutorial misconduct repeated and intensified from opening argument to closing statement. That defense counsel also engaged in misconduct and precipitated one aspect of prosecutorial misconduct is of no moment, for our concern in the defendant's claim of error is whether prosecutorial misconduct denied him a fair trial, and that allegation I would find amply proven. The egregiousness of the prosecutor's misconduct displayed to the jury, as intended, earned the conviction of the defendant.

"The case before us is a criminal case, and the counsel whose statements are in question is the [assistant] state's attorney. [She] is not only an officer of the court, like every attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. In discharging [her] most important duties, [she] deserves and receives in peculiar degree the support of the court and the respect of the citizens of the county. By reason of [her] office, [she] usually exercises great influence upon jurors. [Her] conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because [she] represents

the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice, or resentment. If the accused be guilty, he should nonetheless be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe. While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." *State* v. *Ferrone,* 96 Conn. 160, 168–69, 113 A. 452 (1921) (*Ferrone I*).

A fair trial, and all its concomitant constitutional guarantees, are intended to protect all persons, innocent and guilty alike. "Our constitution . . . does not condition constitutional rights on guilt or innocence." *State* v. *Couture,* supra. I would hold that the defendant, whether guilty or not, was denied a fair trial and the constitutional guarantees protecting (1) his privilege against self-incrimination, (2) his presumption of innocence, and (3) his right to be convicted only upon proof beyond a reasonable doubt.

"[A] prosecutor should avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence. ABA, Standards Relating to the Prosecution Function and the Defense Function (1971) § 5.8." *State* v. *Carr,* 172 Conn. 458, 470, 374 A.2d 1107 (1977). " 'Legitimate argument elucidates the truth. Its power and usefulness in this behalf are very great. The largest latitude should therefore be allowed to counsel in argument fairly within the scope of the evidence. But it has been repeatedly held in other jurisdictions and recently in this, that when counsel persistently travel out of the record, basing argument on

facts not appearing, and appealing to prejudice, irrelevant to the case and outside of the proof, it not only merits the severe censure of the court, but is valid ground for exception.' " *Ferrone I,* supra, 166–67.

By this standard, the prosecutor's opening and concluding summations under review here were improper. "But that is not the end of the inquiry. Because the right implicated is the defendant's due process right to a fair trial, we proceed next to an examination of the remarks to determine their likely impact. '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' *Smith* v. *Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982); *State* v. *Cosgrove,* 186 Conn. 476, 489, 442 A.2d 1320 (1982). 'The question before us on this appeal is not, primarily, whether the remarks in question were proper or improper, but it is whether the action of the trial court in refusing to grant a new trial on account of them, in the exercise of its discretion, so far exceeded or abused the discretion committed to it in a matter of this kind as to warrant us in granting a new trial.' *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902). The question then is whether the remarks of the prosecution were so egregious that no curative instruction could remove their prejudicial impact." *State* v. *Couture,* supra, 562–63.

" '[I]t is "well established that serious prosecutorial misconduct, regardless of the prosecutor's intentions, may so pollute a criminal prosecution as to require a new trial, even without regard to the prejudice to the defendant." *State* v. *Hafner,* [168 Conn. 230, 251, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975)]. Crucial considerations in appellate adjudication of such questions are not only the need, where demonstrated, to discipline prosecutors where reprehensible conduct is present but to assure

ultimate fairness to the defendant. . . .' " (Citations omitted.) *State* v. *Couture,* supra, 563, quoting *State* v. *Binet,* 192 Conn. 618, 629, 473 A.2d 1200 (1984).

Each case of alleged prosecutorial misconduct depends on its own facts and circumstances, e.g., whether the challenged remarks were isolated or brief incidents in a lengthy summation, whether a proper curative instruction was given, and whether the remarks were so deliberate, facially improper, persistent and pronounced that they deprived the accused of a fair trial notwithstanding a curative instruction and evidence of the defendant's guilt. See *State* v. *Couture,* supra, 563–64. To be fair, a trial must be conducted in a clean environment without any infectious pollution of the trial atmosphere by prosecutorial misconduct. I would conclude the defendant's trial here was so tainted by the egregious nature of the prosecutor's arguments as to deny him due process of law.

In her opening remarks, the prosecutor branded the defendant a "liar" and accused him ten times of lying to witnesses. During her closing argument, she repeated these comments on his credibility twenty-nine more times, even asserting that he was a "conclusive liar." She stated he was a "proven liar" twice in one sentence, and emphatically called him a "liar" three and four times in a row. The prosecutor improperly associated her exaggeration of these "lies" of the defendant with the burden of proof in this argument: "You have a man who has lied up and down the ranks of the New Haven police department and also to a fire investigator. Ladies and gentlemen, if that is not proof beyond a reasonable doubt, then, ladies and gentlemen, there can't be a case with proof beyond a reasonable doubt that is based on evidence." This was followed by a further unfair and personal request of the jury: "I ask you to remember that your responsbilitity as jurors serving the Judicial Department of the State of

Connecticut is to make sure that the fifth amendment burden of proof beyond a reasonable doubt is not an unwitting protection for the guilty. . . . The entire people of the State of Connecticut ask you to decide who is a liar, and *this one citizen of the State of Connecticut asks you to decide who was telling the truth and who wasn't telling the truth.*'' (Emphasis added.) It was error for the prosecutor to express her views on the defendant's credibility by stamping him repeatedly and emphatically a ''liar.'' The accusation that he ''lied up and down the ranks of the New Haven police department'' was a prejudicial exaggeration that exceeded the scope of the evidence. Equating that overstatement with proof of guilt beyond a reasonable doubt was a wrongful, and irrevocably harmful, argument, and interference with the function of the jury. It was further improper for the prosecutor to ''ask [the jurors] to remember that your responsibility as jurors . . . is to make sure that the fifth amendment burden of proof beyond a reasonable doubt is not an unwitting protection for the guilty.'' Such a remark was beyond the scope of proper argument, misleading and prejudicial. Finally, it was inappropriate for the prosecutor to emphasize the defendant's alleged incredulity by personally asking as ''one citizen . . . to decide who was telling the truth and who wasn't telling the truth.''

The second feature of the prosecutor's argument, claimed to be improper and materially prejudicial, was the prosecutor's suggestion that the jury weigh her professional ethics against the defendant's guilt. This was done on two occasions. In the first instance, the prosecutor offered the jury this choice: ''You were told, ladies and gentlemen of the jury, that me, not just the State of Connecticut—that I've been unethical. . . . Ladies and gentlemen, let me tell you, if you believe I've intentionally put on any perjured testimony in this case, if you believe . . . that I've lied to you, that I

have misrepresented facts, then even though . . . I am here as the prosecutor for the people of the State of Connecticut—for my ethos, I have to say to you if you believe that, acquit this man." The second time the prosecutor submitted her ethics to the determination of the jury occurred in the conclusion of her argument when she stated: "If, ladies and gentlemen of the jury, you believe I've been unethical, then I won't even ask you to do your job."

The majority opinion's conclusion with respect to this portion of the defendant's claim of error was as follows: "[T]he assistant state's attorney's remark on rebuttal, while improper when viewed in isolation, was clearly invited by defense counsel and, as such, its prejudicial impact was not as great as if it had been unprovoked. . . . We therefore conclude that while the prosecutor's 'voucher' of Sherry Gattison's credibility was improper and may have been prejudicial in isolation, the defendant has not proved that it denied him the right to a fair trial." I disagree with that conclusion. The majority has misconstrued the full thrust of this claim of error.

The particular claim of error is that the prosecutor personalized the issues by asking the jury to pass on her personal integrity and professional ethics before deliberating on the evidence, thereby inferring that she personally vouched for the credibility of the complainant. The guilt or innocence of a defendant should hinge on the evidence presented at trial, rather than on an assessment by the jury of the integrity of counsel. The prosecutor asked the jury on the two occasions to vindicate her personal honesty and integrity. The jury should not have been asked to decide between the prosecutor's professional integrity and the defendant's innocence. I would conclude that it was prejudicial error to predicate the conviction of the defendant on the prosecutor's ethical behavior. See *State* v. *Long,* 148 Ariz. 295, 297, 714 P.2d 465 (1986).

The final claim of prosecutorial misconduct alleges that the repetitious and erroneous references by the prosecution to the fifth amendment in final argument was of such a character that the jury could naturally have taken her remarks to be comments on the defendant's failure to testify. General Statutes § 54-84 (a) provides in relevant part that "[t]he neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official . . . . " The fifth amendment to the United States constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . . " The fourteenth amendment to the federal constitution provides further: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . . " Article first, § 8, of the Connecticut constitution states, as does the fifth amendment to the United States constitution, that "[n]o person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

The defendant's right to a fair trial is implicated by the fourteenth amendment to the United States constitution and by article first, § 8, of the Connecticut constitution. These are the constitutional provisions under which the defendant was guaranteed due process of law in his state prosecution. His right not to testify at trial was guaranteed by the fifth amendment to the United State constitution, extended to state prosecutions by the fourteenth amendment, and by article first, § 8, of the state constitution.

"The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suf-

fer no penalty . . . for such silence." (Citation omitted.) *Malloy* v. *Hogan,* 378 U.S. 1, 8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). The application of the fifth amendment privilege against self-incrimination to state prosecutions was thereafter extended in *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965). "We said in *Malloy* v. *Hogan,* supra, 11, that 'the same standards must determine whether an accused's silence in either a federal or state proceeding is justified.' We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Id., 615.

From this review of federal and state constitutional provisions relevant to the defendant's trial, I would find that the prosecutor's repeated invocation of the fifth amendment "burden of proof" was misleading and inappropriate, and essentially and effectively obliquely constituted improper comment on the defendant's failure to testify. The "fifth amendment" in common legal and lay usage, and more importantly, in legal opinions, such as those in *Malloy* v. *Hogan,* supra, and *Griffin* v. *California,* supra, ordinarily connotes the constitutional privilege against self-incrimination. The fourteenth amendment, however, usually refers to the guarantees of due process of law. While article first § 8, of our state constitution, embraces both protections, it is not generally cited in speech or text in place of the federal amendments as their source or reference. Where these constitutional guarantees are mentioned by counsel in argument, they should not be stated out of context or be otherwise misleading to the jury.

All references in the prosecutor's argument to the "fifth amendment burden of proof" were in the closing stages. Her first statement was as follows: "And, ladies and gentlemen, the fifth amendment burden of proof beyond a reasonable doubt is a protection for the innocent. As much as it is your responsibility to use and apply the fifth amendment burden of proof beyond a reasonable doubt standard to protect the innocent, it is your concomitant responsibility not to allow the fifth amendment burden of proof beyond a reasonable doubt to be a shield for the guilty. Ladies and gentlemen, your responsibilities are equal on both sides. The burden of proof beyond a reasonable doubt is a shield for the innocent. It is not a barrier to conviction for the guilty."

In her second reference to this amendment, the prosecutor stated: "I ask you to remember that your responsibility as jurors serving the Judicial Department of the State of Connecticut is to make sure that the fifth amendment burden of proof beyond a reasonable doubt is not an unwitting protection for the guilty. . . . The entire people of the State of Connecticut ask you to decide who is a liar, and this one citizen of the State of Connecticut asks you to decide who was telling the truth and who wasn't telling the truth." The next reference concluded the argument and was made in this context: "If there were facts left out in this case, from whence did that come? If, ladies and gentlemen, there was evidence of a leg brace, I don't recall it. And, ladies and gentlemen, I submit that if, in fact, you believe Investigator Esposito that this was an intentionally set fire—and I think that that's just about conceded by the defense—then I would submit that the fifth amendment protection of the burden of proof beyond a reasonable doubt has been met by all the evidence in this case because once you know it's an intentionally set fire, you know there is only one person in the world who could

have set that car on fire. You know that there is only one person in the world who lied up and down in every sentence he spoke about this case to the police and to fire officials. There's only one person who lied in every word they said. Ladies and gentlemen, that is the defendant, Robert Floyd.

"And as a representative of the people of the State of Connecticut, I ask that when you retire to that jury deliberating room, that you not let that fifth amendment burden of proof be anything more than it is because the fifth amendment burden of proof is a protection for the innocent and is not a shield to protect the guilty. Thank you."

The juxtaposition of the "fifth amendment burden of proof beyond a reasonable doubt" with the "lies" of the defendant, and with the argument, "If there were facts left out in this case, from whence did that come," appears to strengthen the argument of the defendant that the references to the "fifth amendment" were interpretable as a prohibited comment on the defendant's failure to testify. At the least, they were misleading and improper argument. The further statements that the "fifth amendment" was a shield for the innocent, and not a barrier for the guilty, were incorrect, misleading and prejudicial to the defendant. "Our constitution . . . does not condition constitutional rights on guilt or innocence." *State* v. *Couture,* supra, 563. The requirement of proof beyond a reasonable doubt for a conviction is neither a sword, nor a shield, but a necessary element of proof placed solely upon the prosecution.

"[T]he trial court as well as the court of review must insist that fairness in the trial and in the argument shall be observed. Otherwise justice cannot be done. What was said in [*Ferrone I,* supra, 173,] must never be forgotten: 'The purpose of a criminal trial in this State

is not more to punish the guilty than to discharge the innocent.' " *State* v. *Ferrone,* 97 Conn. 258, 270, 116 A.2d 336 (1922).

For these reasons, I dissent from the majority opinion. I would find that the trial court erred in overruling the defendant's objections to the prosecutor's prejudicial summations and in denying his motions for a mistrial and a new trial.