[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. HISTORY
On May 12, 1983, the petitioner, Donald Utz, was convicted of the crimes of murder, attempted murder and weapon in a motor vehicle. The Connecticut Supreme Court upheld his conviction in State v. Utz, 201 Conn. 190
(1986). The petitioner since then has filed multiple habeas CT Page 3657 corpus actions and a petition for a new trial. This case has been called by all of the participants the "ineffective assistance of counsel case." The court has rendered an opinion in the cases known as Docket Nos. 10 78 17 and 10 78 21 under separate cover. At the time that the proceedings were commenced, two other habeas corpus actions were withdrawn, one being Docket No. 10 78 18 and the other was 10 78 19, so that of the five pending habeas corpus actions, three were presented at trial. Docket Nos. 10 78 17 and 10 78 21 are in the other decision, this is the decision on Docket No. 10 78 20 which is the ineffective assistance case.
The habeas court heard the witnesses, reviewed the exhibits, reviewed the transcripts of the proceedings and read the briefs before rendering this decision.
"[T]he constitutional right to counsel to which every accused person of a crime is entitled is a right to effective assistance of counsel." The United States constitution, amendments six and fourteen; Connecticut constitution, article first, Sec. 8: State v. Rivera, 196 Conn. 567, 569. On a claim of ineffective assistance of counsel, defendant meant that his attorney's performance was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in criminal law. State v. McCarthy, 197 Conn. 166 (1985). Effective assistance of counsel is not and cannot be fixed with yardstick precision, but varies according to unique circumstances of each representation. Levine v. Manson,195 Conn. 636 (1985). The defendant who complains of ineffective assistance of counsel must show, first that counsel's representation fell below standards of reasonably effective assistance and then that counsel's ineffective means at trial pre judiced the defense. Nardini v. Manson,207 Conn. 118 (1988). A convicted defendant who claims that he was denied the effective assistance of counsel bears the burden of proving that there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The Strickland court defined the standard of proof as a "probability sufficient to undermine confidence in the outcome." Id. at 694. There are two prongs to that test. The defendant must show (1) that counsel's performance was deficient, i.e., that he made errors so serious that he did not function as the counsel which the sixth amendment guarantees the defendant; and (2) that counsel's deficient performance pre judiced the defense because counsel's errors were so serious as to deprive the defendant of a fair trial CT Page 3658 whose result is reliable. Id. at 687.
The United States Supreme Court referred to counsel's basic duty to assist the defendant which requires, inter alia, that counsel advocate defendant's cause, consult with the defendant about important decisions, and consult with him with respect to important developments in the course of the case. In addition, counsel owes the defendant a duty of loyalty. The court refused, however, to set forth more specific guidelines as to counsel's conduct. Id. at 688. Rather, the court stated that the "defendant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Id. at I 689. A court reviewing counsel's performance must be "highly deferential" and must determine the reasonableness of the challenged conduct based on the facts of the individual case as they appeared when counsel engaged in the challenged conduct. Id. at 689 and 690. The Connecticut Supreme Court has consistently cited with approval, the Strickland, standard and has never suggested that the Connecticut I constitution imposes a different standard of review for claims of ineffective assistance of counsel. Aillon v. Meachum, 211 Conn. 352, 355 n. 3 (1989).
The Supreme Court in Levine v. Manson, supra, relied upon Strickland for additional guidance in determining whether a petition for writ or habeas corpus alleging, ineffective assistance of counsel had been properly denied. The petitioner there alleged that trial counsel failed to make certain objections and to take exceptions to the court's rulings. The petitioner's appeal from his criminal conviction had been resolved against him. At the evidentiary hearing, the petitioner called as an expert witness an attorney experienced in criminal law. (Note in the instant case no such testimony was produced so no standard was set.) It was his opinion that trial counsel had not "`met the standards of someone who tries these cases on an even infrequent basis.'" Id. at 645 n. 8. The Connecticut court citing Strickland indicated that it required a petitioner to demonstrate (1) that the attorney's performance was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in criminal law, and (2) that the lack of competency contributed to the conviction. The Levine court pointed out that a trial lawyer's decision not to make an objection "is a matter of trial tactics, not evidence of incompetency" and that a defendant's constitutional right to effective assistance of I counsel does not entitled him to an attorney who will make no mistakes. Id. at 648. It is clear in Connecticut that one is entitled to a fair trial but not a perfect trial. CT Page 3659
The petitioner makes much of the fact that there was a long list of witnesses that he claims he presented to Attorney Thim. There is some factual dispute as to how many witnesses were presented to Attorney Thim. It is clear, however, that Attorney Thim made judgments concerning those witnesses. He picked as witnesses those who had the best basis of knowledge and who would make the best appearance in the courtroom. He indicated in his testimony that a common thread running through a lot of the applicant's witnesses was the fact that they drank too much and at least some of them would not have made a good presentation in the courtroom. Others did not have much to offer — all they said basically was that he was a nice person and they would have been character witnesses at best. His review of the witnesses indicated that they were not able to help explaining his mental condition as it changed. (See Transcript afternoon of November 6, 1990, pp. 26-27.)
Attorney Thim was in the best position to make a determination as to whether the witnesses were helpful or hurtful, not the applicant. He was a graduate of the University of Connecticut School of Law in 1968, and was a member of the Law Review. He went to Willams College undergraduate and graduated there in 1965. He was then associated with the prestigious law firm of Marsh, Day and Calhoun in Bridgeport and worked there for four or five years. Thereafter, he was associated with another firm in Bridgeport. He became a public defender in Bridgeport in 1976 and he was handling major felony cases in that Judicial District. He then became the public defender in Danbury. In addition to trying cases, he also supervised others. He basically handled the felony cases while the associate and assistant public defenders handled the misdemeanor cases. At that time, there was one full-time and one part-time public defender in addition to himself. It is abundantly clear that Attorney Thim made decisions based on his excellent training and experience concerning the witnesses he intended to call.
Much is made by the appellant of the fact that Dr. Alexander was the psychiatrist who testified concerning Mr. Utz's "insanity." (The court will refer to the defense as insanity, since that is the way both lawyers have spoken about it in their briefs.) Section 53a-13, the "insanity" defense at the time, makes no provision in its statute for the words "insane" or "insanity," but talks about not being criminally responsible if at the time of the prescribed conduct he lacked substantial capacity as a result of mental disease or defect. CT Page 3660
Dr. Alexander was not chosen out of a hat. Attorney Thim had known him four or five years and had seen him, testify before. He had seen him in court and had seen his reports. The fact that he was not board certified was not a concern as it related to his credibility with the jury. A positive factor was the fact that Dr. Alexander had on occasion testified for the state so that he obviously was not just a hired gun as some psychiatrists can be.
Hindsight is twenty/twenty. As a lawyer preparing a case for trial, one knows decisions are made which sometimes turn out different than one expected. Here it is clear that Attorney Thim used a careful system of selecting his witnesses both as to lay people and professionals. There is no evidence that he deviated from any standard that would have made these activities violative of constitutional rights.
The defendant has made much of the remarks of the state concerning the reference to a "Park Avenue type psychiatrist" and the reference to "just like the Hinkley case which was witnessed by millions of citizens." The defendant has cited as authority for the proposition that the non-objection deprived the defendant of a fair trial. The case of State v. Floyd, 10 Conn. App. 361, 365 (1987). The court has had an opportunity to review that case and finds that this case substantiates the decision made by Attorney Thim. In that case where the state's attorney made reference to her own ethics, the court said, "`the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument.'" State v. Floyd, supra, 365. Further, there was a "voucher" of a witness's credibility and although the court said in isolation it may have been improper, the defendant had not proved that it denied him the right to a fair trial. The court further went on to say that where the state's attorney had referred to someone as a liar, that although they did not condone the word "liar," they were not convinced, given the context of the trial as a whole, that the prosecutor's use of the word "liar" denied the defendant a fair trial. Id. at 368. There is no claim in this case that Judge Lavery did not give a charge as is standard to do concerning arguments of counsel not being evidence.
Both of these remarks were observed by Attorney Thim. He testified at the hearing in this case that he had analyzed both of those items and made a conscious decision not to object to either one of those. He had evaluated that neither one was sufficient to get him a mistrial from Judge Lavery CT Page 3661 after such a lengthy trial. He also evaluated the fact that by getting up and objecting to it might put more emphasis on something that might just pass. It was the conscious decision of a highly trained defense lawyer. There has been no testimony to establish that this caused him to fall below the standards of representing his client in violation of either the Strickland or the Levine standards as were set forth hereinbefore. This court must look, as does the Appellate Court, to the totality of the circumstances. Replete in the appeal of Mr. Utz in the Supreme Court is the comment made by the Supreme Court that one cannot artificially isolate parts from the overall charge. The court said in State v. Utz, 201 Conn. 190, 196, "`It is a well-established rule that the charge to the jury must be read as a whole and that individual instructions are not to be judged in `artificial isolation' from the overall charge.'" They went on to say that "[t]he test is whether the charge as a whole presents the case to the jury so that no in justice will result." Two small references to incidents do not taint the entire trial. In fact, it could reasonably be argued that the state's attorney by dropping to name calling demeaned his office in the case and that the jury could have reasonably felt that which would have been helpful to the defendant. The remarks made in this case clearly do not reach the level of prosecutorial misconduct in the State v. Williams case cited by the petitioner in 204 Conn. 523.
This court cannot construe a tactical decision as evidence of incompetence. The petitioner has failed to prove the deficient performance prong of the Strickland test. Since there is also no evidence that there is a reasonable probability that the outcome of the trial would have been different if trial counsel had objected, this argument must also fall.
Mr. Utz presents the fact that Mr. Thim presented legally inconsistent defenses to the jury. The question of insanity would have been a complete defense. This defense was presented. He also presented evidence in an attempt to establish that Mr. Utz was intoxicated and that he was suffering from an extreme emotional disturbance at the time of the shooting. Each of these defenses would have acted as mitigation to the charge of first degree murder. The claim is that the defense of insanity and intoxication are legally inconsistent and should not both have been presented to the jury in Donald Utz's defense. The claim here is that the presentation of these two strategies was unreasonable and pre judiced Mr. Utz's chosen defense of insanity. The claim is that Mr. Thim fell below the standard of reasonably effective assistance of counsel that Mr. Utz was entitled to. CT Page 3662 Mr. Utz presented no testimony to establish the standard of reasonably effective assistance of counsel that Mr. Utz was entitled to as it related to this issue. It does not appear unreasonable to this court to present a defense of insanity to the jury as well as a defense of intoxication. If the insanity defense was rejected by the jury, there would be an opportunity for them to adopt the intoxication defense which would have been relevant to negate his intent and reduce the murder to manslaughter.
Connecticut General Statutes, Sec. 53a-7 made clear the legislative determination that "evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged," and that the jury was to consider the whole evidence in making determination of the effect of his intoxication or his ability to possess the requisite intent.
The appellant has quoted no Connecticut authority for the proposition that the inconsistent defenses were impermissible and violative of the defendant's constitutional rights to a fair trial and fair representation by counsel.
With the testimony coming in about the blood/alcohol ratio in the system of Mr. Utz, it would have been perhaps a better argument that he did not get fair representation if the defense counsel did not use that as a tool in reducing the exposure. There are many tactics in the defense counsel arsenal short of ultimate victory. Defense counsel historically seek mistrials so that cases are delayed and maybe prosecutions do not take place. A mistrial is a win for a defendant. A conviction on something less than the more serious offense is always considered a win by the defense. In this case to have been able to convince the jury that there was intoxication and therefore the conviction of a lesser charge would be a win for the defendant. In fact, the question of insanity and intoxication together might very well get a compromise verdict or a hung jury rather than just a single issue of was he insane at the time he did it. Again, there is no standard presented to this court to make the determination. The court finds the case cited by the defendant, Long v. State, 764 S.W.2d 30 (1989), which the court has read, not to be relevant or persuasive authority.
Mr. Utz makes much of the pretrial plea negotiations. It is clear that what Mr. Utz thought was offered was not what Attorney Thim thought was offered. In any event, it is clear that Mr. Utz said that he was not willing to take a plea to manslaughter. Taking a voluntary plea to manslaughter and being convicted of manslaughter in lieu of CT Page 3663 murder is a substantial difference.
Donald Utz had a constitutional right to the effective assistance of counsel. That right required his attorney, George Thim, to act in a reasonably competent manner in his defense of Donald Utz. George Thim's conduct concerning the allegations of failure to adequately prepare Mr. Utz for trial, his failure to object to the state's closing argument, his decision to present inconsistent defenses, his conduct concerning the closing arguments, and all his other claims, all fall far below the proof required to show a deficient performance or the pre judice prong of the test for ineffective assistance of counsel as set forth in Strickland v. Washington, supra, and Levine v. Manson, supra. All other claims not briefed are considered abandoned. State v. Ramsundar, 204 Conn. 4, 16 (1989).
For all the foregoing reasons, the petitions of the defendant, Donald Utz, are dismissed.
Karazin, J.