STATE OF CONNECTICUT *v.* DANIEL CLARK
(AC 15715)

Foti, Landau and Daly, Js.

Argued December 1, 1997—officially released June 2, 1998

*Danielle DiBerardini-Albrecht,* certified legal intern, with whom were *Richard Emanuel,* and, on the brief, *Craig S. Meuser,* certified legal intern, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Mary Elizabeth Baran*, assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Daniel Clark, appeals from the judgment of conviction, following a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2)[1] and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A). On appeal, the defendant claims that (1) the trial court (a) abused its discretion with respect to evidentiary rulings and (b) improperly charged the jury, (2) the state failed to present evidence sufficient to convict the defendant of burglary in the first degree and (3) his federal and state constitutional rights to a fair trial were violated due to prosecutorial impropriety. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of Monday, September 26, 1994, the victim, a twenty-six year old woman, was living with her fourteen month old daughter in an apartment in Meriden. The defendant lived with his mother in an apartment in close proximity to that of the victim. The defendant entered the victim's apartment uninvited at approximately 8:30 p.m. rubbed her shoulders and licked and kissed her cheek. Despite the victim's protests, the defendant, who was much bigger than the victim, pushed her onto the couch and squeezed her breasts so hard that it hurt her and caused milk to be expressed. The victim's daughter then began to cry, and

---

[1] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

the defendant ceased his attack and left the victim's apartment. Two days later, after discussing the incident with a counselor whom she had known for five years, the victim reported the incident to the police. At the close of evidence, the defendant moved for a judgment of acquittal, which was denied. Following his conviction, the defendant appealed.

I

The defendant first claims that the trial court abused its discretion by permitting the prosecutor to cross-examine him improperly. We disagree.

The following additional facts and procedure are necessary for our review of the defendant's claim. On direct examination, the investigating police officer testified that he had known the defendant for over twenty years and that he went to the defendant's apartment on three occasions to talk to him about the subject incident. On each occasion, the officer did not find the defendant at home and left his business card in the door with a note asking the defendant to call him. The defendant never contacted the officer. On cross-examination, the officer testified that he did not know whether the defendant had received the business cards, but he assumed that the defendant had received them and had chosen not to respond to his requests. The officer also testified that in his experience, the response rate for someone being investigated is very low.

The defendant testified on his own behalf, but his direct testimony did not relate to the investigating officer or his business cards. The prosecutor did delve into the issue of the officer's business cards, however, on cross-examination.[2]

---

[2] The following colloquy took place during the prosecutor's cross-examination of the defendant.

"Q. And you were eavesdropping on the evening of September 26 to see if she was alone in there because her door was open. Is that a fact, sir?

Defense counsel objected to the questions concerning the officer's business cards as being outside the scope of direct examination. The trial court overruled the objection.

The prosecutor also asked the defendant a number of times whether he had been watching the victim and eavesdropping on her telephone conversations.[3] The defendant testified that he saw the victim often because he lived next door. He also testified that a number of people had seen him talking to the victim prior to September 26, 1994, but that for a variety of reasons, none of the persons who saw him talking to the victim could come to trial to testify on his behalf.[4]

"A. No, that's a lie because I knew she had a roommate and she moved out. I knew she lived there with just her and her child.

"Q. That's right, because you were checking her out.

"A. I lived next door. I seen it all the time. I seen—

"Q. You were watching her from next door.

"A. Whatever you think. I know the facts. I seen her quite often—

"Q. I think we all know the facts here, sir. That's what we're trying to find out.

"A. That's right.

"Q. Now, Detective Gary Brandl—

"A. Yeah.

"Q. he left his card in your door at least—

\* \* \*

"Q. Isn't it a fact, sir, that you never called Detective Brandl because you were avoiding him. You didn't want to talk about this?"

[3] The state's theory of the case was that the defendant had been watching the victim and listening to her telephone conversations because he knew things about the victim that she claims she never told him.

[4] The prosecutor's cross-examination of the defendant included the following colloquy:

"Q. Who else has ever seen you with [the victim]?

"A. My neighbor, Kevin, but he had moved. I was looking for him. I don't know where he's at. My neighbor, Dennis, but he doesn't want to come to court because our landlord is someone he works for so he did not want to get involved.

"Q. Okay. So everybody has either moved out of town or doesn't want to get involved who can say that you knew this young lady before the night that you went in and attacked her. Is that what your testimony is, sir?

"A. No, because my mother knows I know, but my mother never saw me with her.

"[O]ur review of a trial court's evidentiary ruling is limited. Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. *State* v. *Alvarez*, 216 Conn. 301, 306, 579 A.2d 515 (1990). In considering whether the trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . *Jacobsen* v. *Jacobsen*, 177 Conn. 259, 263, 413 A.2d 854 (1979)." (Internal quotations marks omitted.) *State* v. *Nixon*, 32 Conn. App. 224, 234, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995). "It is well settled that the scope of cross-examination is limited to matters covered in the direct examination, except as they involve credibility. *State* v. *Ireland*, 218 Conn. 447, 590 A.2d 106 (1991). 'The court has wide discretion to determine the scope of cross-examination.' *State* v. *Hernandez*, 224 Conn. 196, 208, 618 A.2d 494 (1992)." *State* v. *Nixon*, supra, 234.

"When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word. . . . Matters which might not be strictly relevant on direct examination may be so on cross-examination where that matter is explored for the purpose of credibility. Given that function of cross-examination in shedding light on the credibility of the

"Q. Oh, okay, isn't that convenient. Give us some names, full names and addresses of these people who can come in here and say—

\* \* \*

"A. Kevin, I don't know his last name, but he was a neighbor. Dennis, he knows. Um, Penny Milardi. Um—

"Q. Tell us where we can find these people who saw you with this girl, tell us!

"A. There's two people right now that are at work. If they could take off they'd be here. If I could get them to get subpoenaed, then they'd be here, but they just started new jobs so they don't want to take the chance of losing their job because of this."

witness' direct testimony, [t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony. . . . A question is within the scope of the direct examination if it is intended to rebut, impeach, modify or explain any of the defendant's direct testimony . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, supra, 224 Conn. 207.

The defendant relies on *State* v. *Zdanis*, 173 Conn. 189, 195–96, 377 A.2d 275 (1977), for the proposition that while "credibility may be attacked by contradiction, so long as the matter is in issue . . . it may not be attacked by first introducing one version of an event through a witness for the prosecution and then cross-examining the defendant, who has not testified as to that event on direct, thus creating a retroactive contradiction of his testimony. [B.] Jones on Evidence (6th Ed.) § 25.2, pp. 111–12."

Here, the trial court properly exercised its discretion in permitting the prosecutor to cross-examine the defendant with respect to the officer's business cards and whether he had been watching the victim. The defendant testified on direct examination that his sexual encounter with the victim was consensual, which was contradictory to the testimony of the victim.[5] The

[5] The defendant's version of the incident differs from that of the victim in that he claims that he and the victim knew each other, having spoken to one another on several occasions prior to the subject incident. At approximately 4:30 p.m. on the day in question, while he was standing outside her apartment, the victim invited the defendant to come in, to share the evening meal and to watch television. During the time the defendant was in the apartment, he claimed he overheard the victim's telephone conversation with a friend, listened to music, watched television, talked and "made out" with the victim. The defendant claimed that no physical activity between him and the victim was forced. The defendant left the apartment when the victim went to comfort her daughter when she began to cry.

ultimate question before the jury was credibility. Therefore, the state was entitled to ask questions to rebut, impeach, modify or explain matters affecting credibility. See *State* v. *Zdanis*, supra, 173 Conn. 196.

The questions concerning the officer's business cards were proper because they tended to rebut or impeach the defendant's claim of innocence by demonstrating that he may have avoided contact with the police after his encounter with the victim. The questions in regard to the defendant's watching the victim were appropriate in as much as the defendant admitted that he saw the victim often, that he knew her roommate had moved out and that only the victim and her child lived in the apartment. Clearly, there was evidence before the jury from which it could infer that the defendant was watching the victim.

## II

The defendant's second claim is that the trial court improperly charged the jury with respect to the elements of § 53a-101 (a) (2) and the state's burden of proof. The defendant's claim is without merit.

The defendant did not submit a request to charge nor did he take exception to the charge given by the trial court.[6] "We generally do not consider a claimed error

[6] Our review of the transcript reveals that although the defendant's counsel did not file a request to charge, he did participate in a charge conference in chambers and agreed, on the record, to the charge that the trial court proposed to instruct the jury.

"The Court: Is there anything either side wishes to place on the record?

"Defense Counsel: Yes, Your Honor. It's regarding the jury instruction on request to charge.

"The Court: All right. That's another issue. As I understand it, your request to charge has not been formally filed, but it is a fact that we have gone over it at some length in chambers, the court's charge, and what it is that both sides would request.

"Defense Counsel: And we've reached an agreement as to the total request to charge in this matter."

When a defendant consents to an instruction to the jury, he waives his right to challenge the instruction on appeal. See *State* v. *Anderson*, 209

regarding the giving of or failure to give an instruction unless the matter is covered by a written request to charge or exception has been taken . . . immediately after the charge is delivered. . . . In addition, the exception taken must state distinctly the matter objected to and the ground of objection." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 202 Conn. 349, 362, 521 A.2d 150 (1987). Therefore, the defendant seeks review of his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

In *Golding*, our Supreme Court held that " 'a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail.' " (Emphasis in original.) *State* v. *Hines*, 243 Conn. 796, 817, 709 A.2d 522 (1998), quoting *State* v. *Dash*, 242 Conn. 143, 151, 698 A.2d 297 (1997). " 'An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt.' *State* v. *Hill*, [201 Conn. 505, 512, 523 A.2d 1252 (1986)], citing

Conn. 622, 633, 553 A.2d 589 (1989). Our rules of procedure do not allow a defendant to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. See *State* v. *Drakeford*, 202 Conn. 75, 81, 519 A.2d 1194 (1987). To rule otherwise would permit trial by ambuscade. See *State* v. *Prioleau*, 235 Conn. 274, 311, 664 A.2d 743 (1995). An appellant cannot create a reviewable claim because his appellate counsel disagrees with the strategy of his trial counsel.

U.S. Const., amend XIV; Conn. Const., art. I, § 8; see *In re Winship*, 397 U.S. 358, 362, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Smith*, 194 Conn. 213, 217, 479 A.2d 814 (1984)." *State* v. *Williams*, supra, 202 Conn. 363.

" 'It is well settled that a jury instruction is to be examined in its entirety, and that the test to be applied is whether the charge as a whole presents the case to the jury so that no injustice will be done. *State* v. *Derrico*, 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).' *State* v. *Lytell*, 206 Conn. 657, 664, 539 A.2d 133 (1988); see also *State* v. *Findlay*, 198 Conn. 328, 346–47, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986)." *State* v. *Hines*, supra, 243 Conn. 818–19. On our review of the entire instruction, we determine that there was nothing improper about the trial court's charge to the jury. The defendant's claims here do not meet the second prong of *Golding* in that no constitutional violation exists.

A

The defendant's first claim with respect to the charge is that although the trial court correctly defined the element of "unlawfully entering or remaining," it did not fully inform the jury of the state's burden of proof with respect to this element. This claim is unfounded.

" 'It is the law of this state that a request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance.' " *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980), quoting *Mazzucco* v. *Krall Coal & Oil Co.*, 172 Conn. 355, 357, 374 A.2d 1047 (1977).

Our review of the jury instructions reveals that the trial court instructed the jury no fewer than six times that the state had the burden of proving its case beyond a reasonable doubt, including a specific instruction that every element constituting the offense must be proven beyond a reasonable doubt. The charge also properly included an instruction on the meaning of reasonable doubt.

B

The defendant also claims that the trial court's charge failed to explain how a lawful entry may become an unlawful remaining. Our review of the record proves otherwise.

The trial court first read the jury the statutory definition of "enters or remains unlawfully." See General Statutes § 53a-100 (b),[7] which applies to § 53a-101 (a). The trial court then instructed the jury that "even if a person enters a building lawfully, that is, he had the right or had been given permission and the right had been terminated or the permission withdrawn by someone who had a right to terminate or withdraw permission, you may find that there was unlawful remaining on the premises as the basis of burglary." The trial court's instruction was sufficient to guide the jury and was not improper.

C

The defendant's last claim with respect to the charge is that the trial court improperly defined the element "bodily injury" by using the statutory definition of "physical injury."[8] The substance of the defendant's claim is that bodily injury and physical injury are not

[7] General Statutes § 53a-100 (b) provides in relevant part: "A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so."

[8] General Statutes § 53a-3 (3) provides: " 'Physical injury' means impairment of physical condition or pain . . . ."

the same. Our holding in *State* v. *Phillips*, 17 Conn. App. 391, 552 A.2d 837 (1989), is to the contrary.

"It is elementary jurisprudence that a jury charge is to be considered in its entirety and no part of it is to be critically dissected in order to find a technical inaccuracy in one portion, read in artificial isolation from the overall charge. *State* v. *Jasper*, 200 Conn. 30, 37, 508 A.2d 1387 (1986). 'Jury instructions need not be "exhaustive, perfect or technically accurate," as long as they are "correct in law, adapted to the issues and sufficient for the guidance of the jury." ' *State* v. *Greene*, 11 Conn. App. 575, 580, 528 A.2d 855, cert. denied, 205 Conn. 804, 531 A.2d 938 (1987). Microscopic examination of a jury charge in an effort to find error has been consistently discountenanced by our courts. *State* v. *Mastropetre*, 175 Conn. 512, 524, 400 A.2d 276 (1978); *State* v. *Lopez*, 5 Conn. App. 599, 604, 502 A.2d 418 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986)." *State* v. *Phillips*, supra, 17 Conn. App. 394–95. We hold that the trial court's instructions were correct in law, adapted to the issues and provided sufficient guidance for the jury.

### III

The defendant next claims that the state did not produce sufficient evidence to establish beyond a reasonable doubt that he entered or remained unlawfully in the victim's apartment or that he had the requisite state of mind to commit burglary in the first degree. See General Statutes § 53a-101 (a). These claims are also without merit.

The following additional facts are necessary for our analysis. On the date in question, the victim came home at approximately 4:30 p.m. and did some household chores. She washed her kitchen floor with ammonia, opening the back door of the apartment to permit the ammonia fumes to escape. She then prepared supper,

which she ate with her child. Between 6 and 7 p.m., the victim had an extended telephone conversation with a friend. At about 7 p.m., after she put her baby to bed, the victim washed laundry in the kitchen sink. The back door, which faced the defendant's apartment, was open the entire time. At approximately 8:30 p.m., the victim was standing at the sink when the defendant entered her apartment and introduced himself. The victim did not know why the defendant, whom she had seen once or twice in the neighborhood, had entered her apartment, and she thought that he was just a neighbor seeking to borrow something. The defendant walked over to the victim and said, "I know you've been hurt in the past."[9] He then began to rub the victim's shoulders and to kiss and lick her cheek. The victim tried to push the defendant away and said, "No," and "No. Stop."

"Our courts utilize a two part analysis when reviewing a challenge to the sufficiency of evidence. *State* v. *Henning*, 220 Conn. 417, 420, 599 A.2d 1065 (1991). 'We first review the evidence in the light most favorable to sustaining the guilty verdict.' Id. 'We then determine, upon the facts thus established and the inferences reasonably drawn therefrom, whether any rational trier of fact could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' Id. In the review process, the probative force of the evidence is not diminished if it consists, in whole or in part, of evidence that is circumstantial rather than direct. Id., 420–21. Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing. *State* v. *Osman*, 218 Conn. 432, 437, 589 A.2d 1227 (1991)." *State* v. *Paredes*, 35 Conn. App. 360, 372, 646

---

[9] The victim assumed that the defendant made the statement because he overheard the telephone conversation she had between 6 and 7 p.m. during which she discussed her father's having abused her.

A.2d 234, cert. denied, 231 Conn. 925, 648 A.2d 166 (1994).

## A

The defendant claims that the evidence is insufficient to prove he entered the victim's apartment unlawfully because the victim did not scream or place an emergency telephone call when she first became aware of the defendant's presence in her apartment. The defendant also claims that he could not have remained unlawfully on the premises because he left when the victim asked him to go after her daughter began to cry. We are unpersuaded.

The jury reasonably could infer from the evidence that the defendant did not have permission to enter the victim's apartment and that even if the victim did not initially protest his presence, she certainly let him know that he did not have permission to remain when she called out, "No," and, "Stop."

A finding of fact by the jury must stand if it is reasonably supported by the evidence or the reasonable inferences drawn therefrom. See *State* v. *Allen*, 216 Conn. 367, 380, 579 A.2d 1066 (1990). The jury could have reasonably found that the victim did not consent to the defendant's entering, even though she left her door open and did not ask the defendant to leave. See *State* v. *Gelormino*, 24 Conn. App. 563, 571, 590 A.2d 480, cert. denied, 219 Conn. 911, 593 A.2d 136 (1991). Furthermore, consent to enter or to remain in another's private premises does not encompass consent to commit a crime therein. See id., 571–52. Here, the jurors, as the arbiters of truth; see *State* v. *Walker*, 33 Conn. App. 763, 774, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1209 (1994); clearly could have inferred that the victim's telling the defendant, "No," and, "Stop," apprised the defendant of the fact that he did not have permission to remain in her apartment.

## B

The defendant's second sufficiency claim is that the state's evidence does not prove beyond a reasonable doubt that he "intentionally, knowingly or recklessly inflict[ed] or attempt[ed] to inflict bodily injury" on the victim. See General Statutes § 53a-101 (a) (2).

The gravamen of the defendant's claim is that he did not have the state of mind to cause injury to the victim's breasts because he did not know, nor could have known that because the victim was lactating, squeezing her breasts would result in physical injury or pain. The defendant misconstrues the law. "Short of homicide, [sexual assault] is the ultimate violation of self. It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Sexual assault] is very often accompanied by physical injury to the [victim] . . . ." (Internal quotation marks omitted.) *State* v. *Coleman*, 41 Conn. App. 255, 274, 675 A.2d 887 (1996), rev'd on other grounds, 242 Conn. 523, 700 A.2d 14 (1997); *State* v. *Havican*, 213 Conn. 593, 599 n.3, 569 A.2d 1089 (1990). Here, the victim testified that the defendant squeezed her breasts so hard that they hurt for a week. The evidence before the jury and the inferences to be drawn from it are sufficient to support the jury's verdict.

## IV

Finally, the defendant claims that he was denied due process and a fair trial pursuant to the fifth[10] and fourteenth[11] amendments to the United States constitution

---

[10] The fifth amendment to the United States constitution provides in relevant part: "No person shall be held to answer for a capital, or otherwise infamous crime . . . nor be deprived of life, liberty, or property, without due process of law . . . ."

[11] The fourteenth amendment to the United States constitution provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

and article first, § 8,[12] of the Connecticut constitution in that the prosecutor went beyond the bounds of propriety (1) during cross-examination (a) by employing a retroactive contradiction and (b) by asking questions about facts not in evidence, and (2) during final argument (a) by referring to missing witnesses, (b) by commenting on facts not in evidence, (c) by expressing a personal opinion about the credibility of the parties and (d) by appealing to the emotions, passions and prejudices of the jury. We disagree.

In his brief, the defendant acknowledges that at trial his attorney failed to preserve a number of his claims of prosecutorial misconduct. He argues, however, that the prosecutor's misconduct is reviewable by this court under *State* v. *Golding*, supra, 213 Conn. 233.[13] See *State* v. *Williams*, 204 Conn. 523, 536, 529 A.2d 653 (1987). In the alternative, the defendant argues that his claims are reviewable under the plain error rule pursuant to Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5, because the prosecutor's behavior constitutes one of those "truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

In analyzing the defendant's claims of prosecutorial misconduct, "we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We

---

[12] Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[13] The defendant has also requested that his claims of prosecutorial misconduct be reviewed under the second "exceptional circumstance" of *State* v. *Evans*, 165 Conn. 61, 71–73, 327 A.2d 576 (1973). Because *Golding* encompasses the exceptional circumstances of *Evans*, it is not necessary for us to review the defendant's claims under *Evans*.

do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Sherman*, 38 Conn. App. 371, 376–77, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Fullwood*, [194 Conn. 573, 585, 484 A.2d 435 (1984)]; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, [194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985)]; see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra [1181]; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra [654]; and the strength of the state's case. See *United States* v. *Modica*, supra [1181]; *State* v. *Couture*, supra, 564; *State* v. *Glenn*, [194 Conn. 483, 492, 481 A.2d 741 (1984)]. *State* v. *Williams*, [supra] 204 Conn. 539–40." (Internal quotation marks omitted.) *State* v. *Sherman*, supra, 38 Conn. App. 377.

To prevail on an unpreserved claim of prosecutorial misconduct, the record must reveal a "pattern of misconduct pervasive throughout the trial or conduct that

was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994). Because we previously addressed the defendant's evidentiary claims, our review of prosecutorial misconduct is limited to the defendant's claims concerning the prosecutor's final argument.

As a threshold matter, we find it significant that the defendant's trial attorney did not object to the state's final argument. "Both this court and our Supreme Court have held that 'where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985); *State* v. *Malley*, 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. *State* v. *Lubesky*, supra [484]; *State* v. *Falcone*, [supra, 191 Conn. 23 n.13]. *State* v. *Tyler-Barcomb*, [197 Conn. 666, 673, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986)]; *State* v. *Chace*, 199 Conn. 102, 108, 505 A.2d 712 (1986); *State* v. *Bell*, 13 Conn. App. 420, 426–27, 537 A.2d 496 (1988).' (Internal quotation marks omitted.) *State* v. *Kelly*, 23 Conn. App. 160, 170–71, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991)." *State* v. *Eason*, 47 Conn. App. 117, 121, 703 A.2d 130 (1997), cert denied, 243 Conn. 962, 705 A.2d 552 (1998).

" 'In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n

addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . [W]e must review the comments complained of in the context of the entire trial.' (Internal quotation marks omitted.) *State* v. *Villanueva,* 44 Conn. App. 457, 461–62, 689 A.2d 1141, cert. denied, 240 Conn. 930, 693 A.2d 302 (1997), quoting *State* v. *Hansen,* 39 Conn. App. 384, 395, 666 A.2d 421, cert. denied, 235 Conn. 928, 667 A.2d 554 (1995)." *State* v. *Shinn,* 47 Conn. App. 401, 421, 704 A.2d 816 (1997), cert. denied, 244 Conn. 913, 914, 713 A.2d 832, 833 (1998).

A

The defendant's claim that the prosecutor commented on facts not in the record, specifically that the defendant was watching the victim, is unsupported by the evidence. " 'While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider.' *State* v. *Ferrone,* 96 Conn. 160, 169, 113 A. 452 (1921). 'When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial.' *State* v. *Floyd,* 10 Conn. App. 361, 364, 523 A.2d 1323, cert. denied, 203 Conn. 809, 525 A.2d 523, cert. denied, 484 U.S. 859, 108 S. Ct. 172, 98 L. Ed. 2d 126 (1987)." *State* v. *Sherman,* supra, 38 Conn. App. 394–95.

A prosecutor is entitled, however, to comment on reasonable inferences to be drawn from the evidence. See *State* v. *Prioleau,* 235 Conn. 274, 320, 664 A.2d 743 (1995). Here, the jury well could have inferred from the

evidence that the defendant was watching the victim on the night in question, and we view the prosecutor's final argument as fair comment on the record. See *State* v. *Oehman*, 212 Conn. 325, 333, 562 A.2d 493 (1989).

## B

The defendant next claims that the prosecutor improperly made reference to missing witnesses in violation of the rule enunciated in *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960). The defendant properly points out that a prosecutor must seek and obtain an advance ruling from the trial court if he intends to argue to the jury that an unfavorable inference should be drawn from the absence of a defense witness at trial. See *State* v. *Daniels*, 180 Conn. 101, 113, 429 A.2d 813 (1980). A prosecutor's failure to secure the trial court's permission to refer to missing witnesses, however, fails to reach constitutional magnitude. See *State* v. *Taylor*, 239 Conn. 481, 490, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

A review of the record reveals that the prosecutor's reference to missing witnesses was not for the purpose of asking the jury to draw an adverse inference.[14] The

---

[14] During final argument, the prosecutor said, "Where I asked him, he said they talked. Yesterday he said that they talked, they had conversations and yet when I asked him, when I [asked] him to get us one name of the thirty or forty people he told us lived in those two houses, to give us one name of someone who had seen them talking—because she said they never talked. . . . Has somebody seen you? Oh, well, um, Joe—I don't remember his last name, and this person moved away, and this person's working, he just has a new job, and—ladies and gentlemen, there was nobody. There was nobody who saw them ever talking because they never talked. You cannot bring in people to verify something when it is a fairy tale, and you know that."

On rebuttal, the prosecutor said: "[The defendant testified that he and the victim] were friends, they talked. . . . Well, up here yesterday on the witness stand he named several names and a couple of them were at work, I think, he said. Of course, the last names, they were all vague and [I] couldn't quite pin him down, but a couple of them were at work. . . . Those people, he named the names and they're all fictitious characters out of a

prosecutor did not request a *Secondino* charge and none was given. The central issue in this case was one of credibility. The prosecutor's remarks were made for the purpose of drawing the jury's attention to the defendant's credibility. The state did not argue that the witnesses' testimony would have contradicted that of the defendant, but argued that contrary to the defendant's testimony, there were no witnesses who could testify. Therefore, the prosecutor's comments were appropriate.

C

The defendant's third claim of prosecutorial impropriety during final argument concerns the prosecutor's statements about the defendant's having watched and stalked[15] the victim, and listened in on her conversations. " 'While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider.' *State* v. *Ferrone*, [supra, 96 Conn. 169]. 'When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial.' *State* v. *Floyd*, [supra, 10 Conn. App. 364]." *State* v. *Sherman*, supra, 38 Conn. App. 394–95.

As we reasoned in this opinion in regard to the defendant's evidentiary claims, there was evidence presented through the defendant's own testimony that he had been watching the victim and that he was standing outside

comic book somewhere. They don't exist. No one saw them talking because they didn't talk."

[15] Our review of the record reveals that the prosecutor did not use the word *stalk* until rebuttal, after defense counsel had used the word in his final argument.

the door of the victim's apartment prior to entering the apartment. Therefore, it was proper for the prosecutor to draw the jury's attention to reasonable inferences to be drawn from the facts.

## D

The defendant's fourth claim of impropriety during the prosecutor's final argument alleges that the prosecutor commented on the credibility of the parties. It is axiomatic that " '[t]he prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. *United States* v. *Modica*, supra, [663 F.2d 1181]; *United States* v. *Drummond*, 481 F.2d 62 (2d Cir. 1973); *State* v. *Floyd*, [supra, 10 Conn. App. 365]; ABA Standards for Criminal Justice (Second), The Prosecution Function § 3-5.8 (b) (1985) . . . .' *State* v. *Williams*, supra, 204 Conn. 541. 'The prosecutor may, however, argue to the jury that the evidence and the reasonable inferences to be drawn therefrom should lead the jury to a conclusion as to the credibility of witnesses. *United States* v. *Drummond*, [supra, 62]; *Harris* v. *United States*, [supra, 402 F.2d 656].' . . . *State* v. *Williams*, supra, [204 Conn.] 541 n.6." *State* v. *Sherman*, supra, 38 Conn. App. 396. Because the prosecutor's comments were directed to the inferences that could reasonably be drawn from the two very different versions of the incident before the jury, there was no misconduct.

## E

The defendant's last claim of misconduct on the part of the prosecutor is that the final argument appealed to the emotions, passions and prejudices of the jurors. As a rule, a prosecutor may not resort to such appeals. See id., 400. " 'This does not mean that a prosecutor may not present arguments with logical force and vigor. See *Berger* v. *United States*, 295 U.S. 78, 88, 55 S. Ct.

629, 79 L. Ed. 1314 [1935].' . . ." *State* v. *Sherman,* supra, 38 Conn. App. 401.

As previously noted, the defendant's trial counsel did not object to the prosecutor's final argument, and we also note that the trial court did not intervene to caution the prosecutor or to strike any of the prosecutor's comments. "In considering this claim, we must adhere to the principle that 'the action of the trial court is entitled to weight because of the vantage point from which it can observe and evaluate the circumstances of the trial. The trial court is in a better position to determine the propriety of the remarks of counsel and whether or not they are harmful. See *State* v. *Ubaldi,* [190 Conn. 559, 563, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983)]; *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982); *Downing* v. *State,* 178 Ind. App. 144, 152, 381 N.E.2d 554 (1978).' *State* v. *Glenn,* [supra, 194 Conn. 493]." *State* v. *Sherman,* supra, 38 Conn. App. 395. The court's instructions to the jury did, however, include a charge that the jury's verdict "should be based only on the evidence and that the statements of counsel during closing argument did not constitute evidence. Those instructions served to diminish the impact, if any, the remark[s] may have had on the jury. See *State* v. *Flinter,* 16 Conn. App. 402, 410, 548 A.2d 1 [cert. denied, 209 Conn. 829, 552 A.2d 1216] (1988)." *State* v. *Sherman,* supra, 395–96.

In conclusion, we hold that the state's final argument did not so infect the trial with unfairness as to deny the defendant due process under either the federal or state constitutions and, therefore, that the defendant's claims of prosecutorial misconduct do not meet the third prong of *Golding.* Because we also find that the prosecutor's remarks did not impair the effectiveness or integrity of the judicial process, we similarly conclude that his claims are not reviewable under the plain error doctrine. See *State* v. *O'Brien,* 29 Conn. App. 724,

727–28, 618 A.2d 50 (1992), cert. denied, 225 Conn. 902, 621 A.2d 285 (1993).

The judgment is affirmed.

In this opinion the other judges concurred.