## STATE OF CONNECTICUT *v.* PAUL J. CABRAL
## (AC 19484)

Spear, Mihalakos and Flynn, Js.

Argued April 30—officially released September 4, 2001

*William S. Palmieri,* with whom, on the brief, was *Norman A. Pattis,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, was *Mary M. Galvin,* state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Paul Cabral, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4).[1] On appeal, the defendant claims that (1) his due process rights were violated when the prosecutor commented on a missing defense witness without first seeking the trial court's permission to do so and (2) the trial court improperly refused to grant his motion for a mistrial after the prosecutor argued facts that were not in evidence during her closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 21, 1996, Maria Floriano and Elio Floriano were working in their family liquor store, Corso's Package Store, assisted by Maria's sister, Michelina Ferry, and their brother Salvatore Ferry, who is mentally retarded. At 8 p.m., the family began closing the store, and Salvatore Ferry went outside to pull the metal grating down over the windows. When Salvatore Ferry returned, a man carrying a long, silver automatic pistol followed him in. Michelina Ferry informed the man that the store was closed. Instead of leaving, the man raised his gun at them and attempted to pull a stocking down over his face but succeeded only in covering his hair and forehead. As a result, both Maria

---

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 . . . he . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

Floriano and Michelina Ferry were able to see his face clearly. They described the man as being about six feet and two inches in height, with light to medium brown skin and a moustache. They further described him as overweight, weighing at least two hundred and fifty pounds, with a distinctive, atypical round, full face and cheeks. They described the man's voice as being exceptionally deep and his speaking pattern as unusually slow or sluggish. The man fled the store with about $7000 from the cash register and lottery machine, plus another $200 from Maria Floriano's purse.

The next day, December 22, 1996, Michelina Ferry was eating at a diner and saw a man she recognized as the one who had robbed the store. She followed him out to the parking lot, noted that he drove off in a red and white pickup truck, and copied down the license plate number. After she gave the plate number to the police, the truck was found to be registered to the defendant. On December 31, 1996, the police interviewed the defendant at his place of work, and they observed that he spoke with a deep voice in a slow and deliberate manner.

On January 7, 1997, Michelina Ferry went to the West Haven police station and identified the defendant from a photographic array. On January 8, 1997, Maria Floriano identified the defendant from a reconfigured photographic array. Both Maria Floriano and Michelina Ferry also made in-court identifications of the defendant. Maria Floriano saw the defendant in a bank in October, 1997, and about twelve times thereafter. While in the bank, Maria also was able to hear the defendant's speaking voice.

I

The defendant first claims that his due process rights were violated when the prosecutor commented on a

missing defense witness without first seeking the trial court's permission to do so. We disagree.

The following additional facts and procedural history are necessary to our resolution of this issue. The defendant testified that on the night of the robbery he was attending an Alcoholics Anonymous meeting at Dwight Hall at Yale University. He stated that he had arrived at the meeting at 7:30 p.m., accompanied by Paul Torello. He further testified that Torello no longer resided in the area but had moved to California. The defendant testified that he left the meeting at about 10 p.m. that evening.

The defendant did not call Torello as a witness at trial. In her closing argument, the prosecutor referred to Torello's absence when she stated in pertinent part: "He [witness Erick Bergquist] also tells us the defendant is there with one other person. We know it can't be Torello because the defendant tells us Torello was a regular at that meeting. So Bergquist may himself be [there] another night [be]cause he's got a phantom. He's got a mystery man whose name we've never been given by anybody. . . . The mystery man, we don't know who that is and that leaves us the defendant and his creation, Paul Torello. Well, ladies and gentlemen, I think even the defense has to give us Paul Torello is not there [be]cause he's not here and who's the one person in the world who, if this alibi were true, could say, 'Gee, the defendant was at the AA meeting?' Who's the one person by his testimony? The phantom. And you can't consider it [be]cause he's not here." At the conclusion of the state's closing argument, the defendant objected and requested a mistrial. The trial court denied the request for a mistrial. The defendant did not ask for a curative instruction.

"Our standard of review of prosecutorial misconduct is well established. In determining whether the defen-

dant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown,* 256 Conn. 291, 297–98, 772 A.2d 1107 (2001).

"To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . When analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct, one must not focus solely on the conduct of the prosecutor, but instead, the fairness of the trial as a whole should be at the forefront of the inquiry. . . . Further, because the trial court has the best vantage point for assessing the propriety of the remarks in issue, its determination is entitled to deference. For that reason the defendant must prove that the court's refusal to grant a new trial or give an explicit curative instruction was a clear abuse of discretion." (Citations omitted.) *State* v. *Alexander,* 254 Conn. 290, 303–304, 755 A.2d 868 (2000).

The defendant's reliance on *State* v. *Daniels,* 180 Conn. 101, 429 A.2d 813 (1980), is misplaced. In *Daniels,* our Supreme Court held that "where counsel for either the state or the defendant intends to argue to the jury that an unfavorable inference be drawn from the absence of a witness at trial, an advance ruling from the trial court should be sought and obtained." Id., 113.

In the context of a missing witness, a negative inference is drawn because it is assumed that the witness at issue was not called because his testimony would have been adverse to the defendant. This is not what the prosecutor here was arguing.

The defendant appears to have misunderstood the prosecutor's actual comments during closing arguments. The defendant claims that the prosecutor characterized Paul Torello as "the phantom" during closing argument. In reality, the prosecutor was referring to a second missing witness, not Torello. The defendant is correct in his claim that the prosecutor commented on Torello's absence as a witness. The prosecutor's actions here, however, are similar to those in *State* v. *Clark*, 48 Conn. App. 812, 832, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998), where this court stated that the prosecutor's remarks concerning a missing witness were "for the purpose of drawing the jury's attention to the defendant's credibility" and not for the purpose of asking the jury to draw an adverse inference. The prosecutor's remarks in *Clark* were found to be appropriate. The same parallel can be drawn here. After reviewing the record before us, we are satisfied that the prosecutor's comments, when considered in light of the entire trial, were not flagrantly prejudicial, but were a permissible comment on the credibility of the defendant. We conclude that the court did not abuse its discretion and that the defendant was not denied a fair trial.

## II

The defendant next claims that the court improperly refused to grant a mistrial after the prosecutor argued facts not in evidence during her closing arguments. We do not agree.

The following additional facts and procedural history are necessary to our resolution of this claim. During

his own testimony at trial, the defendant denied ever having known Salvatore Ferry, either in public school or in the community. The prosecutor commented on those denials during her closing argument when she stated in part: "This was somebody who knew Sal Ferry. This was somebody who had to be in the West Haven schools at the same time as Sal Ferry to know he was no threat. Thirty-six years old. Sal Ferry [is] thirty-four. Right through the West Haven school system." After the argument, the defendant requested that a curative instruction be given to the jury, arguing that no evidence had been adduced at trial tending to show that the defendant and Salvatore Ferry knew each other. The court refused the defendant's request.

"We have long recognized the special role played by the state's attorney in a criminal trial. He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence on jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. . . . While the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." (Internal quotation marks omitted.) *State* v. *Alexander*, supra, 254 Conn. 302.

"Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them." (Emphasis in original; internal quotation marks

omitted.) *State* v. *Ross*, 18 Conn. App. 423, 432, 558 A.2d 1015 (1989). The following relevant facts were adduced at trial: (1) the defendant was thirty-six years old at the time of trial; (2) Salvatore Ferry was thirty-four years old at the time of trial; (3) both the defendant and Salvatore Ferry grew up in West Haven; (4) the defendant attended the West Haven public schools; (5) Corso's Package Store was just up the street from the defendant's home; (6) the defendant was an alcoholic; and (7) the defendant had lived in the vicinity of Corso's Package Store for ten years. No evidence was adduced at trial showing that Salvatore Ferry and the defendant knew each other. Apparently, the prosecutor's comments were meant to show that the defendant sent Salvatore Ferry to the rear of the store, unconcerned that he might leave by the back door and call for help because the defendant knew that Salvatore Ferry was mentally slow and therefore not likely to call for the police or other help in the middle of the robbery. This was a tangential issue and harmless in light of other overwhelming evidence of the defendant's guilt. Maria Floriano and Michelina Ferry clearly saw the defendant's unusually round face and head and heard his distinctive, slow speech pattern. Michelina Ferry further positively identified him in a restaurant and a photographic array, and both women made in-court identifications. The prosecutor's remarks here were improper. We conclude, however, that the remarks were harmless and did not cause the defendant substantial prejudice.

The judgment is affirmed.

In this opinion the other judges concurred.