A11A1341. LASTER v. THE STATE.
(715 SE2d 768)

ELLINGTON, Chief Judge.

A Floyd County jury found James Laster guilty beyond a reasonable doubt of family violence battery, OCGA § 16-5-23.1; criminal trespass, OCGA § 16-7-21; and abuse of an elder person, OCGA § 30-5-8. He appeals from the denial of his motion for new trial, and, for the following reasons, we affirm.

1. Laster contends that the evidence was insufficient to support his conviction, pointing to the elderly victim's testimony that, while Laster caused her injuries, he did it accidentally, not intentionally. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

In 2008 or 2009, 48-year-old Laster moved into the home of the victim, an 87-year-old widow who was not related to Laster, but who allowed him to live there free of charge in return for yard and maintenance work. The victim's daughter and neighbors testified, however, that they rarely saw Laster do any work around the victim's home. One of the neighbors testified that, instead, Laster often sat on the victim's front porch drinking alcohol. The victim, whose only income was Social Security benefits, admitted that she regularly gave Laster money to buy food, cigarettes, and alcohol.

According to the victim's neighbors, they repeatedly heard Laster screaming at the victim, telling her that he wanted money for beer, a bicycle, or other things. The victim often visited one of those neighbors, and the neighbor reported that the victim always seemed tired, that the victim had bruises on her arms "all the time," and the victim tried to hide the bruises from her. The neighbor testified that

she believed Laster had caused the bruises and that he was taking advantage of the victim financially, noting that the victim never seemed to have money and was "always trying to borrow some." According to the neighbor, during the visits, the victim sometimes seemed frightened of Laster, admitted that Laster got mad at her if she did not have money to give him, and repeatedly said that she wished Laster would move out of her home.

Then, at approximately 11:30 p.m. on May 7, 2010, the victim knocked on the door of her neighbors. She was "shaking all over," visibly upset, bruised, and bleeding from an injury to her forearm. The victim told them that Laster had grabbed her by the arm, twisted it with both of his hands, and pushed her down. He then poured bleach on her mattress, and the victim was afraid that he was going to burn down the house. The neighbors called 911, and the responding officers observed the victim's injuries, including the fresh wound to her arm. When asked what had happened, the victim told the officers that she and Laster had gotten into an argument, that he had grabbed her arm with both hands and had twisted her arm, and that he had poured bleach on her mattress and threatened to burn her house down. The officers and the neighbors walked over to the victim's house and, as soon as they entered the house, they smelled a "suffocating" odor of bleach that was emanating from the victim's mattress. Laster was not inside the house, so the officers searched the surrounding wooded area, but they were unable to find him.

The next morning, the victim's daughter was notified of the incident, and she immediately took the victim to the emergency room for treatment of the open wound on her forearm. The victim told her daughter that Laster had grabbed her by the arm and twisted it, thereby causing the wound and other bruises. In addition, the daughter observed that the victim seemed "really scared" and distraught and that she had a swollen bruise on the back of her head, which the victim said was caused when Laster pushed her down. The victim asked her daughter to take photographs of her wounds, and the photographs were shown to the jury. The daughter also testified that she believed that her mother was suffering from dementia and that Laster was taking advantage of her financially, noting that, even though her mother gave Laster money for different things, she sometimes did not have enough money for her own food and other needs.

In addition, the State presented evidence of a similar transaction involving Laster and his former wife, who testified that she and Laster got into an argument while they were both drinking and that Laster bit her arm and broke the back windshield of her car.

In arguing that the evidence was insufficient to support his conviction, Laster argues that the victim was a competent, indepen-

dent woman who testified at trial that, on the date at issue, she had stumbled and Laster had tried to catch her with both of his hands in an attempt to prevent her from falling. According to the victim, the injury to her arm was the result of Laster's attempt to help her and was not due to any intentional act by Laster. The victim was unable to recall other facts about the evening, however, including Laster's act of pouring bleach on her mattress and what she had told the neighbors and the police. Further, the victim admitted at trial that, prior to her "fall," she and Laster had been talking in her bedroom and Laster had been "upset" because she had decided to pay someone else to cut her grass. Moreover, as shown above, the victim's recollection of what occurred that night was contradicted by her contemporaneous statements to her neighbors and the police, as well as her statements to her daughter the next morning. In fact, the victim's neighbors, the officers, and her daughter all testified that the victim never told them that she had tripped and that Laster had tried to prevent her from falling by catching her arms.

Although there were conflicts in the evidence presented in this case, it is solely within the jury's authority to resolve such conflicts, to weigh the evidence, and to judge the credibility of the witnesses in reaching its verdict. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B). "[T]he resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation omitted.) *Brooks v. State*, 281 Ga. 514, 516 (1) (640 SE2d 280) (2007). Because there was evidence in this case to support each fact necessary to make out the State's case, the jury was authorized to find that Laster was guilty beyond a reasonable doubt of the charged crimes. *Miller v. State*, 273 Ga. at 832.

2. Laster contends that the trial court erred in denying his motion for new trial, suggesting that the court erred in refusing to allow the victim to testify during the motion hearing regarding her disagreement with the jury's verdict.[1] Because Laster has failed to support this contention with any citation to authority, this alleged error is deemed abandoned. Court of Appeals Rule 25 (c) (2).

3. Finally, Laster contends that he was denied a fair trial, alleging that, at the end of his trial, the prosecutor realized that he knew one of the jurors. According to Laster, if he had learned that the juror had a "predisposition" in favor of the prosecution during voir dire, he would have struck the juror. However, Laster has failed to cite to any evidence in the record to support his contentions, and, even though this Court is not required to cull the record to look for

---

[1] We note that, during the sentencing phase of trial, the trial court allowed the victim to address the court to express her concerns about the jury's verdict.

error,[2] we have, in fact, reviewed the entire record and have concluded that there is not a single reference to anything that supports Laster's contention, nor is there any objection by Laster on this issue. In addition, Laster failed to raise this issue in either his motion for new trial or the hearing thereon.

"A party alleging error carries the burden of showing it affirmatively by the record, and when that burden is not met, the judgment is assumed to be correct and will be affirmed." (Footnote omitted.) *Boles v. Lee*, 270 Ga. 454, 455 (1) (511 SE2d 177) (1999). Further, "[i]ssues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal." (Footnote omitted.) *West v. State*, 300 Ga. App. 583, 585 (2) (685 SE2d 486) (2009). Accordingly, this alleged error presents nothing for this Court to review.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED AUGUST 3, 2011.

*Gary R. Williams*, for appellant.

*Leigh E. Patterson, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.

---

[2] *Rainly v. State*, 307 Ga. App. 467, 477 (6) (705 SE2d 246) (2010).