******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KELLER, J., concurring in part and dissenting in part. I concur with part II of the majority opinion. I respectfully dissent with respect to the conclusion reached in part I, that there was sufficient evidence for the jury to reasonably infer that the defendant, Toby Arthur Berthiaume, knowingly or recklessly inflicted physical injury on the victim and is therefore guilty of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).

I begin by noting that although Jessica Navarro-Gilmore's testimony about seeing two people acting suspiciously and holding a small flat television screen or monitor suggested that two people were involved in committing the burglary, the jury was not instructed under the theory of accessory liability.[1] In its first request to charge, the state requested that the court deliver an accessorial liability instruction. Before Navarro-Gilmore testified about her observation of the two suspicious men, the prosecutor indicated to the court that he expected Navarro-Gilmore to testify to having observed the defendant and another man walking together down the street, and that the defendant was carrying a television monitor. The prosecutor argued that this evidence, along with the fact that he believed Navarro-Gilmore would testify that once the two men knew they were spotted, they attempted to conceal themselves, warranted instructions on both conspiracy to commit burglary in the third degree and accessorial liability.

The court responded that because it had not yet heard the evidence from Navarro-Gilmore, it would "just skip this part [of the proposed charge] for now, take it home and study it up and ask you to move on." Prior to the final charging conference, however, after both sides had rested, the state, without any explanation or further argument to the court, filed an amended information eliminating the second count of conspiracy to commit burglary in the third degree and deleting the reference to General Statutes § 53a-8, the accessorial liability statute, in the first count that charged the defendant with burglary in the first degree. The state also did not pursue further its earlier request for an accessorial liability instruction.

The state's case, therefore, went to the jury on the theory that the defendant was the *principal* perpetrator of burglary in the first degree.[2] Accordingly, the state is precluded from arguing, and does not argue, that the first degree burglary conviction may be affirmed based on an alternative accessorial liability theory. See, e.g., *State* v. *Allen*, 289 Conn. 550, 559, 958 A.2d 1214 (2008) (because defendant was charged as accessory to both crimes of capital felony and murder, it was not neces-

sary for state to prove that defendant, rather than other shooter, fired fatal shot); *State* v. *Channer*, 28 Conn. App. 161, 166, 612 A.2d 95 (noting in review of sufficiency of evidence that reviewing court is limited to considering whether evidence supported finding that defendant acted as principal because trial court did not instruct jury as to accessorial liability), cert. denied, 223 Conn. 921, 614 A.2d 826 (1992).

In *State* v. *Parham*, 174 Conn. 500, 506–509, 391 A.2d 148 (1978), the defendant raised a claim similar to the present claim. In *Parham*, the defendant challenged the court's charge to the jury under the first degree burglary statute. Id., 506. He argued that the statute required that to be found guilty of the aggravated burglary offense, he—as opposed to his accomplice or coparticipant—had to have inflicted or attempted to inflict bodily injury. Id., 507. Our Supreme Court found no error because the trial court properly instructed the jury on accessorial as well as principal liability, and there was evidence from which "the jury could reasonably and logically conclude that the defendant was guilty of burglary in the first degree either as a principal perpetrator or as an aider or abettor." Id., 508. In that case, the defendant's fingerprint was found on a stereo speaker in the victim's living room, and the victim identified the defendant as one of two men she had encountered in her garage. Id., 503. The victim testified that the defendant threw a shirt over her head. Id., 508–509. She further testified about her struggle with the two men, how they handled her, and the resultant injuries inflicted upon her by the perpetrators of the crime. Id., 509.

In the present case, the state was limited to proving beyond a reasonable doubt that the defendant was the principal perpetrator of a burglary in the first degree. The identification witness, Navarro-Gilmore, observed two men, one of whom she later identified as the defendant, "walking quickly and looking over their shoulder[s] suspiciously" on Hartford Avenue in Enfield, a street not far from the victim's home, both carrying what appeared to be a flat screen TV or monitor, resembling one of the items stolen and which the defendant later pawned. Although the majority notes that "there was no evidence presented at trial concerning the identity of the second man or his alleged role, if any, in the burglary,"[3] it acknowledges the testimony of Navarro-Gilmore that *both* of the white men she observed were acting suspiciously, as if they had stolen something.[4] It then refers to a litany of evidence: the defendant lived only a few houses away from the victim, so he was in a position to know that she was alone and vulnerable because he could see that no cars were in her driveway;[5] Navarro-Gilmore reported her observations of the two men to the police about an hour after the victim's daughter had left the victim uninjured in her home, which appeared to be in order; shortly thereafter, after receiv-

ing a call from the victim that her knee was bleeding, her daughter arrived to find the victim's residence in a state of disarray: items had been hastily dumped out, various drawers and cabinets were open, and the dining room chandelier was broken;[6] the television and ring were missing; there was blood on the dining room floor; the victim had sustained a bloody knee, chipped tooth and bruised face, all signs of a struggle; and the phone line in the living room had been cut. The majority concludes that "[a]ll of this evidence, in combination with the defendant's sale of the victim's stolen ring and television shortly thereafter, supports the inference that the defendant remained unlawfully in the victim's home with the intent to commit a crime therein, namely, larceny."

Next, relying on *State* v. *Cote*, 136 Conn. App. 427, 445–46, 46 A.3d 256 (2012), aff'd, 314 Conn. 570, 107 A.3d 367 (2014), the majority concludes that "evidence that the defendant was at or near the residence at about the time of the burglary and that the defendant was in possession of items stolen from the residence thereafter" supports the sustaining of a finding that a burglary occurred on the basis that "although there were no signs of a forced entry, the jury nevertheless could have concluded that the defendant remain[ed] unlawfully in the victim's residence." (Internal quotation marks omitted.) In my view, the majority then takes an unfounded leap by positing that there was sufficient evidence to support the jury's finding that the defendant, in the course of committing the burglary, inflicted bodily injury on the victim. The majority observes that "the state adduced evidence that the victim was uninjured as of 12:50 p.m., and that by at least 3 p.m. had sustained a bloody injury to her knee, a mark on her nose, a bruise on her face and a chipped tooth. During that same time period, around 1:53 p.m., the defendant was observed 'walking suspiciously' with a second man away from the victim's residence with what appeared to be a television, and was photographed selling the victim's stolen items approximately two hours later in Springfield, Massachusetts. The chandelier in the victim's dining room was broken, there was blood on the floor, and the telephone cord in the adjacent room was cut. [The victim's daughter, Marita] Cunningham testified that despite the victim's advanced age, she was a 'feisty individual' who would 'try to stand up for herself and . . . fight back' if someone tried to 'push their way' into her home.[7] From this evidence, the jury reasonably could have concluded that the victim resisted the *defendant's* attempts to burglarize her home, prompting the *defendant* to physically assault the victim and to cut the telephone wire to prevent her from contacting help." (Emphasis added; footnote added.)

While I agree that *Cote* permits the circumstantial evidence in this case to be interpreted in such an attenuated manner as to uphold a conviction of third degree

burglary,[8] the other man walking quickly with the defendant at or near the residence at about the time of the burglary and in possession of an item stolen from the residence should not magically disappear from this inferential equation, resulting in the divination that the defendant was the sole perpetrator of the burglary and, therefore, the person who physically assaulted the victim[9] and cut her telephone cord to prevent her from contacting help. The evidence that distinguished these two men did not shed any light on the issue of which one of them, or both, inflicted bodily injury upon the victim.

In *State* v. *Cote*, supra, 136 Conn. App. 429–30, there was circumstantial evidence that a suspicious vehicle, a Saab, with out-of-state license plates was parked in front of a burglarized home in Stonington. A neighbor saw two men get into the vehicle. Id., 430. Later, by chance, a police chief in nearby Richmond, Rhode Island, saw the same Saab parked in the yard of his friend's home and observed that two men were peering through a window of a garage. Id., 431. Bloodstained white athletic socks were found in the jacket pocket of one of the men, and there were burglary tools as well as a stolen item from the Stonington home in the Saab.[10] Id., 431–32. The defendant in *Cote* and the other man, the codefendant, were charged with burglary in the third degree and larceny in the second degree. Id., 433. We concluded in *Cote* that "the jury . . . reasonably could have inferred that the defendant *and* [the codefendant] worked together to commit the Stonington burglary." (Emphasis added.) Id., 447.

*Cote* is instructive because, like the present case, it involved evidence that implicated two codefendants but did not suggest that one of them was the principal perpetrator of the crime. *Cote*'s reasoning suggests that the evidentiary inferences the majority uses to implicate only the defendant in the present case should apply equally to the unidentified man who was seen accompanying the defendant in the vicinity of the victim's home shortly after the burglary took place. It is significant that Navarro-Gilmore did not identify the defendant as the only person holding the small flat screen television alone, but she twice testified that both men were both holding it. I disagree with the majority that it is permissible to allow the jury to extend the allowable inference that the defendant and the other male were involved in a burglary as a result of being near the crime scene and being in possession of the stolen flat screen television into conjecture that the defendant must have been the *sole* perpetrator of the burglary who unlawfully remained in the home, stole the victim's property, and inflicted physical injury on the victim because he lived nearby and ultimately pawned the victim's stolen television and ring.

This is especially true in light of the fact that there was no testimony from the victim either describing any

kind of struggle or assault or identifying her attacker or attackers; no testimony from the other man with whom the defendant was observed; or any physical evidence such as blood, fingerprints, or DNA evidence that implicated the defendant as an assailant. Against this evidentiary backdrop, I conclude that any inference the jury drew that the defendant knowingly or recklessly inflicted physical injury on the victim appears to have been the product of unreasonable speculation. There is no evidence, direct or circumstantial, that supports a finding that one specific man out of the two, or both, inflicted physical injury on the victim. "[A] jury may draw reasonable and logical inferences from the facts proven, but it may not resort to speculation and conjecture." (Internal quotation marks omitted.) *State* v. *Terry*, 161 Conn. App. 797, 807, 128 A.3d 958 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016).

Connecting the defendant to the infliction of the victim's injuries because he was seen shortly after the time the burglary probably occurred with one of the stolen items on a street near to the burgled premises and the evidence that, later that day, he pawned the stolen property, is not the result of drawing reasonable inferences. The majority agrees with the state that the defendant criminally assaulted the victim and that, by cutting a telephone cord in her residence, he tried to prevent her from obtaining help, but the undisputed presence of an equally suspicious cohort and the lack of any additional evidence, direct or circumstantial, as to the exact role the defendant played in the process of burglarizing the premises makes it speculative to conclude that the defendant inflicted physical injury on the victim. As to the infliction of physical injury element of burglary in the first degree, the jury was not viewing evidence that could yield contrary inferences as to guilt or innocence of the defendant alone. Rather, it was viewing evidence that yielded contrary, irreconcilable inferences as to which of the equally positioned suspicious white men seen by Navarro-Gilmore was the victim's attacker, and no additional circumstantial evidence justified the choice the jury made in rejecting the possibility that the other suspicious man, as opposed to the defendant, or that both men caused injury to the victim. The only evidence that differentiates the defendant from the man who was suspiciously walking with him is that the defendant lived near the victim,[11] and he was later seen at a business in Springfield, Massachusetts, pawning the stolen items. Yet none of this additional evidence concerning the defendant reasonably or logically justifies the factual inference that the defendant, alone or in concert with the other suspicious man, inflicted physical injury on the victim.

"[T]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts

because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. . . . But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment." (Internal quotation marks omitted.) *State* v. *Rivera*, 169 Conn. App. 343, 359, 150 A.3d 244 (2016), cert. denied, 324 Conn. 905, A.3d (2017). In my assessment of the evidence, there is no correlation between the facts established in the present case and the conclusion that the defendant inflicted physical injury on the victim.

The four decisions the state cites to support its argument that there was sufficient evidence that the defendant inflicted injury on the victim do not persuasively compare with or establish the sufficiency of the circumstantial evidence the jury had in this case. In the two Connecticut decisions cited, *State* v. *Gemmell*, 151 Conn. App. 590, 94 A.3d 1253, cert. denied, 314 Conn. 915, 100 A.3d 405 (2014), and *State* v. *Clark*, 48 Conn. App. 812, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998), the perpetrator of the attack was absolutely identified by the victim. The defendant in *Gemmell* had been in a previous relationship with the victim, and she testified as to his attack of her. *State* v. *Gemmell*, supra, 593–94. The defendant in *Clark* was a neighbor of the victim, and she knew who he was. She, too, described his physical attack of her. *State* v. *Clark*, supra, 814–18. In the two out-of-state cases cited by the state, *Laster* v. *State*, 311 Ga. App. 360, 360–62, 715 S.E.2d 768 (2011), and *State* v. *Greene*, Docket No. E-2013-00475-CCA-R3-CD, 2014 WL 3384661, *4 (Tenn. Crim. App. July 10, 2014), cert. denied, Tennessee Supreme Court, Docket No. E2013-00475-SC-R11-CD (December 17, 2014), the victims identified their attackers and described the details of their assaults.[12]

"The due process clause of the fourteenth amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." (Internal quotation marks omitted.) *State* v. *Johnson*, 165 Conn. App. 255, 288, 138 A.3d 1108, cert. denied, 322 Conn. 904, 138 A.3d 933 (2016). Here, the court instructed the jury that the defendant could be found guilty only upon proof that he "knowingly or recklessly inflicted bodily injury on someone." I would conclude that the circumstantial evidence in this case was insufficient to convict the defendant of burglary in the first degree beyond a reasonable doubt. Although the state presented sufficient evidence to demonstrate that the defendant, with the intent to commit a larceny, entered and remained unlawfully in the victim's resi-

dence, I do not believe that the state presented sufficient evidence to demonstrate beyond a reasonable doubt that, in the course of committing the offense, he knowingly or recklessly inflicted bodily injury on the victim. Thus, I would conclude that the state satisfied its burden of proof with respect to burglary in the third degree in that it presented evidence that the defendant remained unlawfully in a building for the purpose of committing a larceny therein, but, in my view, it failed to prove beyond a reasonable doubt the additional required element that serves to elevate the crime to the perpetration of a burglary in the first degree.

This court may order modification of an erroneous judgment if the evidence is sufficient to support a conviction of a lesser included offense on which the jury properly had been charged, as the jury's verdict necessarily includes a finding that the defendant was guilty of that lesser offense. See, e.g., *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979); *State* v. *Grant*, 177 Conn. 140, 147–49, 411 A.2d 917 (1979). In the present case, the court charged the jury on the lesser included offense of burglary in the third degree under General Statutes § 53a-103, and the defendant does not claim error as to any portion of the charge.

Accordingly I would reverse the judgment of the trial court and remand the case to the trial court with direction to modify the judgment and for the resentencing of the defendant on the lesser included offense of burglary in the third degree.

[1] In our evaluation of the sufficiency of the evidence, we, of course, consider the theory of liability on which the jury was instructed and, thus, legally and logically could have based its verdict. See *Cole* v. *Arkansas*, 333 U.S. 196, 202, 68 S. Ct. 514, 92 L. Ed. 644 (1948) ("[t]o conform to due process of law, [defendants are] entitled to have the validity of their convictions appraised on consideration of the case as it was tried and as the issues were determined in the trial court"); *State* v. *Crespo*, 317 Conn. 1, 15 n.14, 115 A.3d 447 (2015) ("our review of the defendant's claim of evidentiary insufficiency is limited to the theory on which the case was submitted to the jury").

[2] On the count of burglary in the first degree, the trial court did not instruct the jury to consider whether the defendant intentionally inflicted physical injury on the victim or whether the defendant merely attempted to inflict physical injury on her. Earlier, during one of several charging conferences, in discussing the proposed instruction on burglary in the first degree, the court stated: "Then . . . the next, element three, we took out intentionally, so we'll take it out here, it's knowingly or recklessly inflicted." There is no indication in the record as to the evidentiary gap that may have formed the basis for this deletion. "Penal statutes are to be construed strictly . . . and not extended by implication to create liability that the legislature did not purport to create." (Citation omitted.) *State* v. *Hufford*, 205 Conn. 386, 392, 533 A.2d 866 (1987). "Inflict" means "[to] afflict . . . to give by or as if by striking" or "to cause . . . something unpleasant . . . to be endured . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2012) p. 641. This case, of course, concerns the infliction of physical injury.

The state argues, and the majority agrees, that the jury had sufficient evidence to infer that the defendant engaged in an altercation with the victim and that he struck her in the face. Because, as the charge was submitted to the jury in this case, proof of the aggravating element of burglary in the first degree requires a showing that the defendant "inflict[ed]" physical injury on the victim; General Statutes § 53a-101 (a) (2); the exclusion of the word "intentionally" nevertheless did not permit the jury to conclude that the defendant could be convicted on that count absent proof he had

knowingly or recklessly caused physical injury to the victim by personally engaging in a physical struggle with her that caused her injury. In charging the jury on the lesser included offense of burglary in the third degree, the court instructed the jury that it had to determine that it was the defendant who was the perpetrator of that offense, but it did provide similar guidance to the jury in relation to its burglary in the first degree instruction.

Additionally, I observe that, although it was not raised by the defendant as a claim of prosecutorial impropriety on appeal, the prosecutor improperly argued to the jury during rebuttal argument and wrongfully informed it that "[i]f you decide that [the defendant] is the person [who] entered that house, [who] took the TV, [and who] then pawned up in Springfield, there's no need to find him not guilty on count one, you should never get to burglary in the third degree." The element of knowing or reckless infliction of physical injury to the victim was not mentioned.

[3] There was a codefendant who was prosecuted separately.

[4] Navarro-Gilmore testified that she had prior larceny convictions and a pending larceny charge and therefore justified her suspicions as she had "walked the walk," acting in the same manner as the two men she observed after stealing something and fearing discovery.

[5] As to this conclusion, there was no evidence that the defendant had been home during the time preceding the burglary. Detective Brian Callaghan of the Enfield Police Department testified that the defendant was "associat[ed] with another address," 10 Bigelow Avenue, and the location of this address was shown to the jury by means of an aerial photograph. Yet, this evidence appears to demonstrate that an occupant located inside of the residence at 10 Bigelow Avenue would not have been able to observe the victim's residence. The Bigelow Avenue residence is blocks away from the victim's residence, and is located on the corner of White Street and Bigelow Street. It was after Navarro-Gilmore and the driver of the car in which she was a passenger turned the car onto White Street that she lost sight of the two suspicious men she had seen carrying the television.

[6] The victim's daughter, Norma Shannon, testified that a crystal from the dining room chandelier had fallen off of it.

[7] Again, the majority previously noted that "there were no signs of a forced entry . . . ."

[8] The state relies on *Cote* and other cases, but they are distinguishable in that they involved direct or circumstantial evidence of a more convincing nature than that presented in the present case, and they did not involve situations in which the defendant was one of several suspected perpetrators of the crime. In *State* v. *Sherman*, 127 Conn. App. 377, 383–90, 13 A.3d 1138 (2011), the defendant was unable to demonstrate that the evidence was insufficient to prove beyond a reasonable doubt that he had entered the premises unlawfully in light of evidence that he was in close proximity to the victim's residence at the time of the burglary, he possessed items missing from the residence following the burglary, and he admitted that he had stolen jewelry and guns. In *State* v. *Spikes*, 111 Conn. App. 543, 555, 961 A.2d 426 (2008), cert. denied, 291 Conn. 901, 967 A.2d 114, cert. denied, 558 U.S. 898, 130 S. Ct. 249, 175 L. Ed. 2d 170 (2009), the defendant was seen in close proximity to the burgled home not only "shortly after" the burglary occurred, but also shortly before the burglary, and he was observed by a police officer and a postal worker. In *State* v. *Marshall*, 51 Conn. App. 489, 491, 495–96, 723 A.2d 1156, cert. denied, 248 Conn. 903, 732 A.2d 178 (1999), the defendant, who was the only suspected perpetrator, was, like the defendant in the present case, in possession of a stolen item at a pawn shop later in the day, but there also was signature crime evidence, and the defendant's fingerprints were found on an air conditioning duct used to enter the burglarized apartment.

[9] The state previously had charged the defendant with assault of an elderly person in the third degree in violation of General Statutes § 53a-61a, an offense which was not charged in either of its two subsequent amended informations. During trial, the state filed its first amended information and charged the defendant with burglary in the first degree and conspiracy to commit burglary in the third degree. After the state rested its case, the defendant moved for judgment of acquittal on both counts. The court denied the defendant's motion for judgment of acquittal on the count of burglary in the first degree but reserved decision on the count of conspiracy to commit burglary in the third degree. Thereafter, the state filed its second amended information, at which time it deleted the conspiracy to commit burglary in the third degree count.

[10] There also was conduct evincing consciousness of guilt by the defendant

in *Cote* in that there was evidence that he had dumped a bag of stolen jewelry outside his car in the bushes where he had parked his car after following the Richmond police chief to the police station. See *State* v. *Cote*, supra, 136 Conn. App. 433.

[11] There was no evidence presented to the jury identifying the codefendant, the factual basis for his being charged with respect to the burglary, or the location of his residence.

[12] In *Laster*, however, the victim, who suffered from dementia, had difficulty remembering what had happened to her, but her original statements to her neighbor, her daughter, and the police describing her assault at the hands of the defendant in that case were held to be sufficient evidence to convict him, notwithstanding the victim's contradictory testimony in court that the defendant had injured her accidentally. *Laster* v. *State*, supra, 311 Ga. App. 360–62.

———————————————